UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARIO PILLCO MOROCHO, et al.,
    Plaintiffs

v.

BRISTOL COUNTY SHERIFFF'S OFFICE, et al.,
    Defendants

Civil Action No:
1:22-10652-WGY

### **DEFENDANTS BRISTOL COUNTY SHERIFF'S OFFICE, SHERIFF THOMAS HODGSON AND SUPERINTENDENT STEVEN SOUZA, in their official and individual capacities, IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.R. 12 (b)(6)**

Now come the Bristol County Sheriff's Office, Sheriff Thomas Hodgson and Superintendent Steven Souza, in their official and individual capacities, pursuant to Fed. R. Civ. P.R. 12(b)(6) and Moves this Honorable Court to dismiss Counts 1, 2, 16(the first), 16 (the second) and 17 of the Complaint against them and states as reasons that the Complaint fails to state claims for which relief can be granted and further set forth their reasons in the accompanying memorandum.

    Respectfully submitted,
    Defendants Bristol County Sheriff's Office,
    Sheriff Thomas Hodgson and
    Superintendent Steven Souza

    By their attorney,

    /s/ Bruce A. Assad
    Bruce A. Assad, Esq., BBO #0221980
    Special Assistant Attorney General
    Bristol County Sheriff's Office
    400 Faunce Corner Road
    Dartmouth, MA  02747
    (508) 995-1311

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARIO PILLCO MOROCHO, et al.,

Plaintiffs

V.

Civil Action No:
1:22-10652-WGY

BRISTOL COUNTY SHERIFF'S OFFICE, et al.,

Defendants.

**<u>MEMORANDUM OF DEFENDANTS BRISTOL COUNTY SHERIFF'S OFFICE, SHERIFF THOMAS HODGSON AND SUPERINTENDENT STEVEN SOUZA, in their official and individual capacities, IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

**INTRODUCTION**

The 83 page Complaint in the instant action was brought by sixteen Plaintiffs, who in the year 2020 were immigration detainees held by the Defendant United States Department of Homeland Security (DHS) and housed at the Defendant Bristol County Sheriff's Office by contractual arrangement between the federal government and the sheriff's office. Within the Complaint, the Plaintiffs allege violations of 42 U.S.C. §1983 against Defendant Sheriff Hodgson, Defendant Superintendent Steven Souza and Defendant Todd Lyons, Boston Field Director of the United States Immigration and Customs Enforcement (ICE), in both their official and individual capacities, asserting a failure to insure their protection from contracting COVID- 19. Additionally, the Plaintiff's claims that the Defendant Bristol County Sheriff's Office violated the Plaintiffs' rights under the Americans with Disabilities Act and the Rehabilitation Act.

1

The present motion seeks to dismiss the claims against Defendants Hodgson, Souza, in both their individual and their official capacities based on the fact that the action is barred by the 11th Amendment, Qualified Immunity and also by the Doctrine of Issue Preclusion. Additionally, the Bristol County Sheriff's Office seeks dismissal of the action seeking relief under the Americans with Disabilities Act and the Rehabilitation Act based on a settlement and release approved by this Court in the case of <u>Savino v. Souza,</u> docket 1:20-cv-10617 WGY. (Attached as Exhibit A)

**Background**

On March 27, 2020, a class action suit was filed against Sheriff Hodgson, Superintendent Steven Souza, Todd Lyons and several other officials of the DHS and ICE. <u>Savino v. Souza,</u> docket 1:20-cv-10617 WGY. The Plaintiffs in that class action encompassed all of the ICE detainees housed at the Bristol County Sheriff's Office and included all of the Plaintiffs of the instant case. That suit alleged that the Defendants had violated the Plaintiffs' rights under 42 U.S.C. §1983 and the Rehabilitation Act based on an alleged failure of the Defendants to protect them from contracting COVID-19 while in detention. <u>Savino</u> complaint pages 21-24. In that action, all defendants were represented by the United States Attorney.[1]

After long and involved settlement negotiations, and with the assistance of a Magistrate-Judge, the parties crafted a lengthy Settlement Agreement and Release. That agreement, approved by the Court, resolved all matters that were or could have been fairly raised in the action. It is clear that the instant case, *inter-alia,* appears to be an attempt to re-litigate issues of potential exposure to COVID-19 that were settled long ago by the parties.

---

[1] The United States and several federal agencies were made defendants in the instant action but there is no indication that they have been served.

2

One of the remedies sought by the class action plaintiffs in the *Savino* case was *inter-alia* the release of all ICE detainees from ICE custody due to the threat of exposure to COVID-19. ICE and DHS, who was in total control of custody decisions, opposed most these releases mostly because of the dangerousness and criminal histories of certain detainees. Ultimately, the federal court weighed factors such as the dangerousness and existing health conditions of individual detainees and began to order the release of those detainees the court deemed suitable to be released under conditions of supervision. Other ICE detainees were denied supervised release by the court.

On May 1, 2020, a group of approximately 10 detainees, out of the 25 detainees remaining in the dormitory housing unit, in unison, complained to the prison's contracted health provider that they were experiencing at least two specific "symptoms of COVID-19." As per BCSO, Department of Health and CDC policies at that time, detainees in congregate housing arrangements, were required to be tested for COVID-19 and kept in quarantine isolation for 14 days, or until they tested negative for COVID-19, to avoid the possibility of infecting others in the housing area. Once told that they would have to be tested and removed to isolation, the detainees who had complained of symptoms refused to be removed for testing and isolation.

Because the presence of 10 detainees potentially infected with COVID-19 posed an immediate health threat to all the detainees and staff working in the housing unit, Sheriff Hodgson and a group of correction officers went to the housing unit to attempt to convince the 10 detainees of the necessity of being tested for COVID-19 and the required isolation procedures. At first, Sheriff Hodgson spoke to the detainees and told them that in order to protect themselves and the others, COVID-19 protocols required all detainees or prisoners who reported COVID-19 symptoms to be tested

3

at the BCSO Health Center and then be isolated until either they tested negative or remained in isolation for 14 days.

After he finished his explanation, the names of those who had reported symptoms were called, one by one, to be transported to the BCSO Health Center for testing. The detainees then refused to be transported to the Health Center. One detainee, after his name was called, went over to the phone and began to make a phone call. The Sheriff then walked over to the detainee, told to put down the phone and report for transport. The detainee refused and then along with several other detainees threatened the Sheriff causing several correction officers to intervene. At that point a riot enveloped the entire housing unit which resulted in the detainees completely destroying the housing unit causing approximately $25,000 worth of damages. Correction officers from the Special Response Team were then called and using pepper spray quelled the riot in approximately 90 seconds. In addition to the Plaintiffs' complaints regarding vulnerability to COVID-19 while detained, they also allege that excessive force was used by the Sheriff and un-named correction officers to quell the riot.

**ARGUMENT**

**A. The Eleventh Amendment bars any claims against Hodgson and Souza in their official capacities.**

It is well settled that Congress did not intend to waive states' Eleventh Amendment sovereign immunity protection from suit in federal court by enacting 42 U.S.C. § 1983. *Will v. Michigan Dept of State Police*, 491 U.S. 58, 66, (1989). Moreover, it is undisputed that the Commonwealth of Massachusetts has not consented to suit under § 1983. *Woodbridge v. Worcester State Hosp.*, 384 Mass. 38, 44-45, 423 N.E.2d 782 (1981). Neither states, state agencies, or state employees in their official capacities are "persons" within the meaning of § 1983. *Will*,

4

*supra* at 66-67, 70-71. Therefor Count 1, alleging a violation of § 1983 against BCSO and against Hodgson and Souza in their official capacities, should be dismissed.

**B.  Sheriff Hodgson and Superintendent Souza are entitled to Qualified Immunity in both their official and individual capacities as to any Civil Rights claims**

The purpose of the Qualified Immunity doctrine is that "public officials performing discretionary functions should be free to act without fear of retributive suits for damages except when they should have understood that particular conduct was unlawful." *Limone v. Condon,* 372 F.3d 39, 44 (1st Cir.2004). Thus, the Supreme Court has held that qualified immunity "is an *immunity from suit* rather than a mere defense to liability" and should be determined at an early date in the litigation as "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, (1985).

In determining whether officials are entitled to qualified immunity a three-part test is employed by the courts. *See Rivera–Jiménez v. Pierluisi,* 362 F.3d 87, 93 (1st Cir.2004). First, the court must assess whether: " 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' " *Riverdale Mills Corp. v. Pimpare,* 392 F.3d 55, 61 (1st Cir.2004) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). The second prong of the test is: " 'whether the right was clearly established at the time of the alleged violation' such that a reasonable officer would 'be on notice that the conduct was unlawful.' " *Id.* (quoting *Suboh v. Dist. Attorney's Office,* 298 F.3d 81, 90 (1st Cir.2002)). Lastly, the court must determine: "whether a 'reasonable officer, similarly situated, would understand that the challenged conduct violated' the clearly established right at issue." *Id.* (quoting *Suboh,* 298 F.3d at 90).

In the instant case, with regard to the actions of Hodgson and Souza regarding civil rights violations arising out of potential exposure to COVID-19, the Plaintiffs cannot defeat the defense of qualified immunity. It is undisputed that the pandemic of COVID-19 presented an unprecedented challenge to all segments of society and especially those entities which had to deal with persons living in congregate care environments such as nursing homes and prisons. Especially during the early days of the outbreak, guidance from public health agencies and medical providers were often at variance and, at time contradictory. For example, at the beginning of the pandemic, the Massachusetts Department of Public Health had less strict recommendations for quarantine for first responders than for workers in other businesses. In retrospect, after three plus years of COVID-19, guidelines have frequently changed and were not even consistent between the states.

It is further unquestioned that the BCSO and its staff took significant measures to prevent the outbreak of COVID-19 in the facility. Clearly, it is impossible for the Plaintiffs to show that either Hodgson or Souza "would be on notice that their conduct was unlawful" or that "a 'reasonable officer, similarly situated, would understand that the challenged conduct violated' the clearly established right at issue." *Suboh*, *supra* at 90. Moreover, there is no good faith allegation that any of the Plaintiffs suffered any harm due to any alleged failure to properly protect the detainees from contracting COVID-19. Accordingly, Defendants Hodgson and Souza are entitled to qualified immunity as to Counts 1 and 2 of the Complaint.

The "first" Count 16 of the Complaint [2] Plaintiff Battistotti, one of the detainees who reported COVID-19 symptoms, complains that Sheriff Hodgson "used excessive force" against him. After the Sheriff ordered him to put down the phone and go with the officers to be taken to the Health Center to be tested for COVID-19, Battistotti refused to put down the phone and comply. The Sheriff attempted to take the phone from him which is when Battistotti resisted and, together with other detainees who joined with him, initiated the riot at the ICE Detention Center. Battistotti allegations differ within the complaint as to what he actually alleges that the Sheriff did. In paragraph 539 of the Complaint he alleges that Hodgson handcuffed (zip-tied) him where in paragraph 293 of the Complaint he alleges that "Officer Doe" zip-tied his hands. Notwithstanding the discrepancy, it is clear that the incident arose where Battistotti refused to comply with a lawful, reasonable order of the Sheriff to allow himself to be tested for COVID-19. Had Battistotti complied with the order there would have been no further ado. Battistotti however, chose to first verbally and then physically resist a lawful order to submit to COVID-19 testing. Again, under the well-established standards of qualified immunity, it is inconceivable that Sheriff Hodgson would be on notice that his conduct in making Battistotti put down the phone when the detainee refused to do so and be tested, was unlawful in any way or that the Sheriff or any officer, similarly situated, would understand that the challenged conduct violated' the clearly established right at issue. *Suboh, supra* at 90. Prison officials have not only the right but also the obligation to use reasonable force to compel prisoners to comply with lawful orders. Taking a phone away from a misbehaving detainee cannot, as a matter of law, be deemed "unconstitutional conduct." As such Sheriff Hodgson is entitled to Qualified Immunity on the "first" count 16 of the Complaint.

---

[2] There are apparently two count 16s. The second one alleges a violation of the Rehabilitation Act.

### C. The Claims against the Bristol County Sheriff's Office under the ADA and Rehabilitation Act are barred based on the Settlement and Release Agreement approved by the Court.

Count 16 of the Complaint asserts a violation of the Rehabilitation Act against *inter-alia* the Bristol County Sheriff's Office and Count 17 asserts a violation of the ADA against the same defendants. The First Circuit has concluded that claims brought under the Rehabilitation Act and the ADA are identical and are subject to the same judicial analysis. *Calero–Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 19 (1st Cir.2004); *accord, Smith v. The Public Schools of Northborough-Southborough Massachusetts*, 133 F.Supp.3d 289, 295 (D. Mass 2015)

In the Settlement Release Agreement approved by the court in the *Savino* case, the Plaintiffs "release and discharge" the Defendants from the Rehabilitation Act claims alleged in the Complaint. *See* Settlement Agreement *Savino v. Souza,* docket 1:20-cv-10617 WGY, page 12. (Exhibit A) As the claims brought by the Plaintiffs in the *Savino* case concern identical allegations related to potential COVID-19 exposure while they were detained, those claims were fully released. Accordingly, Counts 16 and 17 of the Complaint against the Bristol County Sheriff's Office should be dismissed.

### D. Notwithstanding the Settlement Agreement and the prohibition of the Eleventh Amendment, the action against the Bristol County Sheriff's Office and Defendants Hodgson and Souza in their official capacities are barred by the Doctrine of Issue Preclusion.

The First Circuit has made it clear that under federal law settlements may have preclusive effect if there is court approval of the settlement or there is entry of judgment with prejudice. *See, United States v. Cunan,* 156 F.3d 110, 114 (1st Cir.1998) ("[A] voluntary dismissal with prejudice is ordinarily deemed a final judgment that satisfies the *res judicata* criterion."); *Langton v. Hogan,* 71 F.3d 930, 935 (1st Cir.1995) ("When a dispute of law

8

exists between parties to a case and they agree to a settlement of that dispute and entry of a judgment with prejudice based on that settlement, then the terms of that judgment in relation to that legal issue are subject to res judicata principles. A judgment that is entered with prejudice under the terms of a settlement, whether by stipulated dismissal, a consent judgment, or a confession of judgment, is not subject to collateral attack by a party or a person in privity, and it bars a second suit on the same claim or cause of action."); *In re Medomak Canning,* 922 F.2d 895, 900 (1st Cir.1990) ("Generally, a court-approved settlement receives the same *res judicata* effect as a litigated judgment....").

The U.S. Supreme Court has determined that under the principles of *res judicata,* , a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94 (1980). Accordingly, the settlement of a dispute when that settlement agreement is approved by a court is considered to have the same legal significance as a judgment on the merits and therefore res-judicata.

Here, in the Savino case, all causes of action concerning claims arising out of potential exposure to COVID-19 while detained clearly "were or could have been raised" in that case. Accordingly, Counts 1, 16 and 17 should be dismissed as res-judicata and barred from re-litigation.

**Conclusion**

For the above reasons, Counts 1, 2 16(the first), 16(the second) and 17 should be dismissed.

Respectfully submitted,

Defendants Bristol County Sheriff's Office
Sheriff Thomas Hodgson and
Superintendent Steven Souza

By their attorney,

/s/ Bruce A. Assad
Bruce A. Assad, Esq., BBO # 0221980
Special Assistant Attorney General
Bristol County Sheriff's Office
400 Faunce Corner Road
Dartmouth, MA  02747
(508) 995-1311

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  August 24, 2022

/s/ Bruce A. Assad

Bruce A. Assad, Esq.