UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

MARIO PILLCO MOROCHO, et al.,

Plaintiffs

V.

Civil Action No:
1:22-10652-WGY

BRISTOL COUNTY SHERIFF'S OFFICE, et al.,

Defendants.

**REPLY MEMORANDUM OF DEFENDANTS BRISTOL COUNTY SHERIFF'S OFFICE, SHERIFF THOMAS HODGSON AND SUPERINTENDENT STEVEN SOUZA, in their official and individual capacities, IN SUPPORT OF THEIR MOTION TO DISMISS**

**INTRODUCTION**

In their opposition, the Plaintiffs assert two main avenues of alleged wrongdoing on behalf of Sheriff Hodgson and Superintendent Souza. Firstly, they contend that the named defendants acted deliberately indifferent in not releasing them from custody and shielding them from the potential harm of COVID-19. Secondly, that excessive force was used to quell the riot in the ICE B dormitory started by ICE detainees who refused to be tested for COVID-19 after complaining of symptoms. The Plaintiffs have opposed the Defendant's assertion of the defense of qualified immunity primarily on the basis that the defendants were "on notice" of unconstitutional conduct regarding COVID protections when this court allowed a preliminary injunction after finding that the Plaintiff's representing a class of all ICE detainees were likely to succeed on the merits. That case was resolved by settlement and no adjudication of deliberate difference was ever entered against the named defendants in that case.

1

In December of 2020, acting on a complaint alleging deliberate indifference at all of the Commonwealths 13 Sheriff's Departments relative to COVID protection, the Supreme Judicial Court appointed a retired superior court judge as a master to find facts and report back to the SJC. Based on the facts found by the master, which included information from each Sheriff's Department, expert reports from both sides and information from the Mass. Department of Public Health, the Court looked at all counties' response to COVID-19, including Bristol, and decided that although each counties responses have not been uniform, it found "beyond dispute" that no Sheriff's Department had been guilty of deliberate indifference. <u>Committee for Public Counsel Services v. Barnstable County Sheriff's Office, et al.</u>, 488 Mass 460, 477 (2021). In that considered decision the SJC specifically found that a "failure to conduct routine, screening testing of incarcerated people or staff" or the failure to reduce their incarcerated populations did not establish deliberate indifference. <u>Id. at 475-477.</u>   The Court stated in pertinent part:

*As all parties acknowledge, the CDC guidelines are mere recommendations, not mandates. It is well established that while such professional guidelines "may be instructive in certain cases, they simply do not establish the constitutional minima." <u>Bell v. Wolfish, 441 U.S. 520, 543 n.27, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)</u>. See <u>Foster, 484 Mass. at 722, 146 N.E.3d 372</u> ("While compliance with professional guidance is not enough, on its own, to establish constitutionality [or a lack thereof], ... such compliance does provide useful indications to be considered in conjunction with other factors ...").*

*Here, the record reflects that the defendants consulted with the department's epidemiologists in an attempt to implement a testing strategy in conformity with CDC guidelines. It is undisputed that the strategy ultimately adopted did not include regular screening testing of asymptomatic individuals. However, it also is undisputed that the department did not specifically recommend the adoption of such regular screening testing. Instead, after consultation with the department's epidemiologists, each of the defendants adopted some combination of symptom screening, testing, or quarantining at intake; testing of symptomatic individuals and close contacts; and isolation of infected individuals. Certain houses of correction also conducted broader testing of asymptomatic individuals when advised to do so by department epidemiologists in response to an uptick in positive case.*
 *In addition to implementing these strategies for screening, testing, isolation, and quarantine, the houses of correction adopted enhanced hygiene practices, implemented strategies to minimize in-person contact, and -- in perhaps the most significant development -- began offering a highly effective vaccine to all inmates and staff.<u>19 6</u>Although one can dispute whether the defendants' testing strategies with regard to the COVID-19 pandemic are in full compliance with current CDC recommendations regarding screening testing, we conclude that it is beyond dispute on the record before us that the plaintiffs have failed to establish deliberate indifference on the part of the defendants with respect to their efforts to mitigate risks and control the spread of COVID-19 in the houses of correction. Moreover, given the apparent success of the defendants' efforts -- with weekly new cases falling as of the time this case was argued and no deaths reported since June 2020 -- it was not unreasonable for the defendants to decline to accelerate their testing efforts to the highest levels recommended by the CDC.*
*See <u>Valentine v. Collier, 993 F.3d 270, 283 (5th Cir. 2021)</u> ("We conclude that it was not unreasonable for Defendants to rely on the healthcare experts who were legally delegated the responsibility of crafting a COVID-*

*19 response policy, and, in any event, the policy was a reasonable response because it set forth safety measures in accordance with the CDC guidelines"); Wilson v. Williams, 961 F.3d 829, 841 (6th Cir. 2020) (prison officials not deliberately indifferent to risks of COVID-19 where their response included "screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks" and they were "on the cusp of expanding testing"); Swain v. Junior, 958 F.3d 1081, 1090 (11th Cir. 2020) (plaintiffs unlikely to succeed in establishing deliberate indifference where defendants adopted "extensive safety measures" in response to COVID-19 pandemic "such as increasing screening, providing protective equipment, adopting social distancing when possible, quarantining symptomatic inmates, and enhancing cleaning procedures"). Therefore, the plaintiffs have failed to establish an entitlement to relief under the Eighth Amendment or art. 26 with respect to the defendants' mitigation strategies with regard to the COVID-19 pandemic, which include as one component their strategies for testing for COVID-19.  Id.at 476-477.*

**Argument**

**Based on the SJC's final adjudication that Bristol County was not deliberately indifferent to incarcerated persons regarding COVID protection, qualified immunity is warranted.**

Massachusetts and Federal Courts apply the doctrine of collateral estoppel as described in the *Restatement (Second) of Judgments (1982).In re:* Sonnus Networks, Inc., 499 F.3d 47, 57 (1st Cir. 2007).  That Court outlined the three elements for estoppel to apply:

(1) there was a final judgment on the merits in the prior adjudication; (2) the party against (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Additionally the issue decided in the prior adjudication must have been essential to the earlier judgment. *Id* at 57

Here, the issues before the SJC regarding COVID prevention and deliberate indifference are identical.  The parties were in privity as the SJC reviewed the COVID precautions in each Sheriff's Department, including Bristol County.  Accordingly, given the SJC finding that "without dispute" no Sheriff's Office was deliberately indifferent in that each followed the recommendations of the Department of Public Health and their own infectious disease expert, the defendants as a matter of law are entitled to qualified immunity.[1]

---

[1] It is not insignificant to note that no Plaintiff has plead that they suffered harm from COVID.

3

**The Defendants are entitled to qualified immunity relative to their response in a riot situation.**

On May 1, 2020, after certain ICE detainees were released by the U.S. District Court and others were denied release, ten detainees, in a group all complained of "COVID-like symptoms." Those detainees pursuant to COVID protocols were then ordered to be removed from the unit and either be tested and/or be isolated which they uniformly refused. Given the CDC guidance, that exposure to positive cases for thirty minutes or more could cause asymptomatic persons to contract the disease, time was of the essence to protect the rest of the dormitory unit. When the detainees refused, the Sheriff went to the unit explaining that when each symptomatic detainee's name was called, they had to go to be tested and/or isolated. When Detainee Battistotti's name was called he refused to go and instead went to make a telephone call. When the Sheriff walked over to him and ordered him to put down the phone and go to be tested, the riot began with a chair being thrown at the Sheriff and the detainees converging on him and the other officers. The riot was quelled in about 90 seconds by Special Response Team but not after $25,000 of damage was done to the unit.

In reviewing claims for deliberate indifference during riot situations, great deference must be given to law enforcement. The United States Supreme Court has clearly stated:

> When the "ever-present potential for violent confrontation and conflagration," *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977), ripens into *actual* unrest and conflict, the admonition that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," *Rhodes v. Chapman, supra,* 452 U.S., at 349, n. 14, 101 S.Ct., at 2400, n. 14, carries special weight. "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S., at 547, 99 S.Ct., at 1878. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, in ruling on a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury. <u>Whitley v. Albers</u>, 475 U.S. 312, 321-322 (1986).

In the case at bar, taking into account the urgency not only of quelling a riot but also working against time to isolate potential carriers of COVID from other detainees, no reasonable inference of wantonness in the infliction of pain can be made and qualified immunity is required.

**Conclusion**

For the above stated reasons Defendants Hodgson and Souza are entitled to qualified immunity.

    Respectfully submitted,

    Defendants Bristol County Sheriff's Office
    Sheriff Thomas Hodgson and
    Superintendent Steven Souza

    By their attorney,

    /s/ Bruce A. Assad
    Bruce A. Assad, Esq., BBO # 0221980
    Special Assistant Attorney General
    Bristol County Sheriff's Office
    400 Faunce Corner Road
    Dartmouth, MA  02747
    (508) 995-1311

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  October 7, 2022

    /s/ Bruce A. Assad
    Bruce A. Assad, Esq.