EXHIBIT 1

## DROIGSA-07-0032

INTER-GOVERNMENTAL SERVICE AGREEMENT
BETWEEN THE
UNITED STATES DEPARTMENT OF HOMELAND SECURITY
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
OFFICE OF DETENTION AND REMOVAL
AND
BRISTOL COUNTY SHERIFF OFFICE
400 FAUNCE CORNER ROAD
N. DARTMOUTH, MA 02747

This Inter-Governmental Service Agreement ("Agreement") is entered into between United States Department of Homeland Security Immigration and Customs Enforcement ("ICE"), and [Bristol County Sheriff OFFICE **("Service Provider")** for the detention and care of aliens ("**detainees**"). The term "Parties" is used in this Agreement to refer jointly to ICE and the Service Provider.

## FACILITY LOCATION:

The Service Provider shall provide detention services for detainees at the following institution(s):

BRISTOL COUNTY CORRECTIONAL AND JAIL
400 FAUNCE CORNER ROAD
N. DARTMOUTH, MA 02747

### Article I. Purpose

A. <u>Purpose:</u> The purpose of this Intergovernmental Service Agreement (IGSA) is to establish an Agreement between ICE and the Service Provider for the detention, and care of persons detained under the authority of the Immigration and Nationality Act, as amended. All persons in the custody of ICE are "Administrative Detainees". This term recognizes that ICE detainees are not charged with criminal violations and are only held in custody to assure their presence throughout the administrative hearing process and to assure their presence for removal from the United States pursuant to a lawful final order by the Immigration Court, the Board of Immigration Appeals or other Federal judicial body.

B. <u>Responsibilities:</u> This Agreement sets forth the responsibilities of ICE and the Service Provider. The Agreement states the services the Service Provider shall perform satisfactorily to receive payment from ICE at the rate prescribed in Article I, C.

C. <u>Guidance:</u> This is a fixed rate agreement, not a cost reimbursable agreement, with respect to the detainee day rate. The detainee day rate is **$90.00.** ICE shall be responsible for reviewing and approving the costs associated with this Agreement and subsequent modifications utilizing all applicable federal procurement laws, regulations and standards in arriving at the detainee day rate.

1

## Article II.  General

A.  Funding:  The obligation of ICE to make payments to the Service Provider is contingent upon the availability of Federal funds.  ICE will neither present detainees to the Service Provider nor direct performance of any other services until ICE has the appropriate funding.  Orders will be placed under this Agreement when specific requirements have been identified and funding obtained.  Performance under this Agreement is not authorized until the Contracting Officer issues an order, in writing. The effective date of the Agreement will be negotiated and specified in a delivery order to this Agreement that is supported by the ICE Contracting Officer.  This Agreement is neither binding nor effective unless signed by the ICE Contracting Officer.  Payments at the approved rate will be paid upon the return of the signed Agreement by the authorized Local Government official to ICE.

B.  Subcontractors:  The Service Provider shall notify and obtain approval from the ICE Contracting Officer's Technical Representative (COTR) or designated ICE official if it intends to house ICE detainees in a facility other than the  Bristol County Correctional Facility  If either that facility, or any future facility is operated by an entity other than the Service Provider, ICE shall treat the entity as a subcontractor to the Service Provider.  The Service Provider shall obtain the Contracting Officer's approval before subcontracting the detention and care of detainees to another entity.  The Contracting Officer has the right to deny, withhold, or withdraw approval of the proposed subcontractor.  Upon approval by the Contracting Officer, the Service Provider shall ensure that any subcontract includes all provisions of this Agreement, and shall provide ICE with copies of all subcontracts.  All payments will be made to the Service Provider.  ICE will not accept invoices from, or make payments to a subcontractor.

C.  Consistent with Law:  This is a firm fixed rate agreement, not cost reimbursable agreement.  This Agreement is permitted under applicable statutes, regulation, policies or judicial mandates.  Any provision of this Agreement contrary to applicable statutes, regulation, policies or judicial mandates is null and void and shall not necessarily affect the balance of the Agreement.

## Article III.  Covered Services

A.  Bedspace:  The Service Provider shall provide male/female beds on a space available basis.  The Service Provider shall house all detainees as determined within the Service Provider's classification system.  ICE will be financially liable only for the actual detainee days as defined in Paragraph C of Article III.

B.  Basic Needs:  The Service Provider shall provide ICE detainees with safekeeping, housing, subsistence, medical and other services in accordance with this Agreement.  In providing these services, the Service Provider shall ensure compliance with all applicable laws, regulations, fire and safety codes, policies and procedures.  If the Service Provider determines that ICE has delivered a person for custody who is under the age of eighteen (18), the Service Provider shall not house that person with adult detainees and shall immediately notify the ICE COTR or designated ICE official.  The types and levels of services shall be consistent with those the Service Provider routinely affords other inmates.

2

C. <u>Unit of Service and Financial Liability:</u> The unit of service is called a "detainee day" and is defined as one person per day. The detainee day begins on the date of arrival. The Service Provider may bill ICE for the date of arrival but not the date of departure. The Service Provider shall not charge for costs that are not directly related to the housing and detention of detainees. Such costs include but are not limited to:

    1) Salaries of elected officials
    2) Salaries of employees not directly engaged in the housing and detention of detainees
    3) Indirect costs in which a percentage of all local government costs are pro-rated and applied to individual departments unless, those cost are allocated under an approved Cost Allocation Plan
    4) Detainee services which are not provided to, or cannot be used by, Federal detainees
    5) Operating costs of facilities not utilized by Federal detainees
    6) Interest on borrowing (however represented), bond discounts, costs of financing/refinancing, except as prescribed by OMB Circular A-87.
    7) Legal or professional fees (specifically legal expenses for prosecution of claims against the Federal Government, legal expenses of individual detainees or inmates)
    8) Contingencies

D. <u>Interpretive Services:</u> The Service Provider shall make special provisions for non-English speaking, handicapped or illiterate detainees. ICE will reimburse the Service Provider for the actual costs associated with providing commercial written or telephone language interpretive services. Upon request, ICE will assist the Service Provider in obtaining translation services. The Service Provider shall provide all instructions verbally either in English or the detainees' language, as appropriate, to detainees who cannot read. The Service Provider shall include the actual costs that the Service Provider paid for such services on its monthly invoice. Except in emergency situations, the Service Provider shall not use detainees for translation services. If the Service Provider uses a detainee for translation service, it shall notify ICE within twenty-four (24) hours of the translation service.

E. <u>Escort and Transportation Services:</u> The Service Provider will provide, upon request and as scheduled by ICE, necessary escort and transportation services for ICE detainees to and from designated locations. Escort services will be required for escorting detainees to court hearings; escorting witnesses to the courtroom and staged with the ICE Judge during administrative proceedings. Transportation Services shall be performed by at least two (2) qualified sworn law enforcement or correctional officer personnel employed by the Service Provider under their policies, procedures and authorities. <u>See Article XVII.</u>

**Article IV. Receiving and Discharging Detainees**

A. <u>Required Activity:</u> The Service Provider shall receive and discharge detainees only to and from properly identified ICE personnel or other properly identified Federal law enforcement officials with prior authorization from DHS/ICE. Presentation of U.S. Government identification shall constitute "proper identification." The Service Provider shall furnish receiving and discharging services twenty-four (24) hours per day, seven (7) days per week. ICE shall furnish the Service Provider with reasonable notice of receiving and discharging detainees. The Service Provider shall ensure positive identification and recording of detainees and ICE officers. The Service Provider

3

shall not permit medical or emergency discharges except through coordination with on-duty ICE officers.

B. Emergency Situations:  ICE detainees shall not be released from the facility into the custody of other Federal, state, or local officials for any reason, except for medical or emergency situations, without express authorization of ICE.

C. Restricted Release of Detainees:  The Service Provider shall not release ICE detainees from its physical custody to any persons other than those described in Paragraph A of Article IV for any reason, except for either medical, other emergency situations, or in response to a federal writ of habeas corpus.  If an ICE detainee is sought for federal, state, or local proceedings, only ICE may authorize release of the detainee for such purposes.  The Service Provider shall contact the ICE COTR or designated ICE official immediately regarding any such requests.

D. Service Provider Right of Refusal:  The Service Provider retains the right to refuse acceptance, or request removal, of any detainee exhibiting violent or disruptive behavior, or of any detainee found to have a medical condition that requires medical care beyond the scope of the Service Provider's health care provider.  In the case of a detainee already in custody, the Service Provider shall notify ICE and request such removal of the detainee from the Facility.  The Service Provider shall allow ICE reasonable time to make alternative arrangements for the detainee.

E. Emergency Evacuation:  In the event of an emergency requiring evacuation of the Facility, the Service Provider shall evacuate ICE detainees in the same manner, and with the same safeguards, as it employs for persons detained under the Service Provider's authority.  The Service Provider shall notify the ICE COTR or designated ICE official within two (2) hours of evacuation.

## Article V.  DHS/ICE Detention Standards

## SATISFACTORY PERFORMANCE:

The Service Provider is required to house detainees and perform related detention services in accordance with the most current edition of **ICE National Detention Standards** (http://www.ice.gov/partners/dro/opsmanual/index.htm).  ICE Inspectors will conduct periodic inspections of the facility to assure compliance with the ICE National Detention Standards.

## Article VI.  Medical Services

A. Auspices of Health Authority:  The Service Provider shall provide ICE detainees with on-site health care services under the control of a local government designated Health Authority. The Service Provider shall ensure equipment, supplies, and materials, as required by the Health Authority, are furnished to deliver health care on-site.

B. Level of Professionalism:  The Service Provider shall ensure that all health care service providers utilized for ICE detainees hold current licenses, certifications, and/or registrations with the State and/or City where they are practicing. The Service Provider shall retain a registered nurse to provide health care and sick call coverage unless expressly stated otherwise in this Agreement. In

4

the absence of a health care professional, non-health care personnel may refer detainees to health care resources based upon protocols developed by United States Public Health Service (USPHS) Division of Immigration Health Services (DIHS).

C. Access to Health Care:  The Service Provider shall ensure that on-site medical and health care coverage as defined below is available for all ICE detainees at the facility for at least eight (8) hours per day, seven (7) days per week. The Service Provider shall ensure that its employees solicit each detainee for health complaints and deliver the complaints in writing to the medical and health care staff. The Service Provider shall furnish the detainees instructions in his or her native language for gaining access to health care services as prescribed in Article III, Paragraph D.

D. On-Site Health Care:  The Service Provider shall furnish on-site health care under this Agreement. **The Service Provider shall not charge any ICE detainee an additional fee or Co-payment for medical services or treatment provided at the Service Provider's facility.**  The Service Provider shall ensure that ICE detainees receive no lower level of on-site medical care and services than those it provides to local inmates. On-site health care services shall include arrival screening within twenty-four (24) hours of arrival at the Facility, sick call coverage, provision of over-the-counter medications, treatment of minor injuries (e.g. lacerations, sprains, and contusions), treatment of special needs and mental health assessments. Detainees with chronic conditions shall receive prescribed treatment and follow-up care.

1.  Bristol County Sheriff Office contracts for medical care with Correctional Medical Care Inc. and it is comprehensive treatment, including diagnostic services and treatment. Under the terms of this agreement the Government will not be charged for any medical services until after December 6, 2009.  DIHS will handle medical services after December 6, 2009.

E.  Arrival Screening:  Arrival screening shall include at a minimum TB symptom screening, planting of the Tuberculin Skin Test (PPD), and recording the history of past and present illnesses (mental and physical).  The health care service provider or trained health care personnel may perform the arrival screening.

F.  Acceptance of Detainees with Extreme Health Conditions:  If the Service Provider determines that an ICE detainee has a medical condition which renders that person unacceptable for detention under this Agreement, (for example, contagious disease, condition needing life support, uncontrollable violence), the Service Provider shall notify the ICE COTR or the designated ICE official. Upon such notification the Service Provider shall allow ICE reasonable time to make the proper arrangements for further disposition of that detainee.

G.  DIHS Pre-Approval for Non-Emergency Off-Site Care: The Service Provider shall obtain DIHS approval for any non-emergency, off-site healthcare for any detainee.  DIHS acts as the agent and final health authority for ICE on all off-site detainee medical and health related matters. The relationship of the DIHS to the detainee equals that of physician to patient.  The Service Provider shall release any and all medical information for ICE detainees to the DIHS representatives upon request. The Service Provider shall solicit DIHS approval before proceeding with non-emergency, off-site medical care (e.g. off site lab testing, eyeglasses, cosmetic dental prosthetics, dental care for cosmetic purposes). The Service Provider shall submit supporting documentation for non-routine,

5

off-site medical health services to DIHS. For medical care provided outside the facility, DIHS may determine that an alternative medical provider or institution is more cost-effective or more aptly meets the needs of ICE and the detainee. ICE may refuse to reimburse the Service Provider for non-emergency medical costs incurred that were not pre-approved by the DIHS. The Service Provider shall send all requests for pre-approval for non-emergent off-site care to:

> Phone: (888) 718-8947
> FAX:   (866) 475-9349
> Via website:  www.inshealth.org

The Service Provider is to notify all medical providers approved to furnish off-site health care of detainees to submit their bills in accordance with instructions provided to:

> United States Public Health Services
> Division of Immigration Health Services
> 1220 L Street, NW PMB 468
> Washington, DC 20005-4018
> (Phone): (888)-718-8947
> (FAX):  (866)-475-9349
> Via website:  www.inshealth.org

H. <u>Emergency Medical Care:</u> The Service Provider shall furnish twenty-four (24) hour emergency medical care and emergency evacuation procedures. In an emergency, the Service Provider shall obtain the medical treatment required to preserve the detainee's health. The Service Provider shall have access to an off-site emergency medical provider at all times. The Health Authority of the Service Provider shall notify the DIHS Managed Care Coordinator by calling the telephone number listed in paragraph G above as soon as possible, and in no case more than seventy-two (72) hours after detainee receipt of such care. The Health Authority will obtain pre-authorization from the DIHS Managed Care Coordinator for service(s) beyond the initial emergency situation.

I. <u>Off-Site Guards:</u> The Service Provider shall provide guards at all times detainees are admitted to an outside medical facility.

J. <u>DIHS Visits:</u> The Service Provider shall allow DIHS Managed Care Coordinators reasonable access to its facility for the purpose of liaison activities with the Health Authority and associated Service Provider departments.

## Article VII. No Employment of Unauthorized Aliens

Subject to existing laws, regulations, Executive Orders, and addenda to this Agreement, the Service Provider shall not employ aliens unauthorized to work in the United States.  Except for maintaining personal living areas, ICE detainees shall not be required to perform manual labor.

## Article VIII. Employment Screening Requirements

6

A. <u>General.</u> The Service Provider shall certify to the U.S. Immigration and Customs Enforcement, Contracting Officer that any employees performing under this Agreement, who have access to ICE detainees, will have successfully completed an employment screening that includes at a minimum a criminal history records check, employment reference checks and a citizenship check.

B. <u>Employment Eligibility.</u>  Screening criteria that will exclude applicants from consideration to perform under this agreement includes:

    1. Felony convictions
    2. Conviction of a sex crime
    3. Offense/s involving a child victim
    4. Felony drug convictions
    5. Pattern of arrests, without convictions, that brings into question a person's judgment and reliability to promote the efficiency and integrity of the ICE mission.
    6. Intentional falsification and/or omission of pertinent personal information to influence a favorable employment decision.

Subject to existing law, regulations and/or other provisions of this Agreement, illegal or undocumented aliens shall not be employed by the Service Provider.

The Service Provider shall certify that each employee working on this Agreement will have a Social Security Card issued and approved by the Social Security Administration.  The Service Provider shall be responsible to the Government for acts and omissions of his own employees and for any Subcontractor(s) and their employees.

The Service Provider shall expressly incorporate this provision into any and all Subcontracts or subordinate agreements issued in support of this Agreement.

The Service Provider shall recertify their employees every three years by conducting a criminal history records check to maintain the integrity of the workforce.

The Service Provider shall implement a Self-Reporting requirement for its employees to immediately report one's own criminal arrest/s to superiors.

C. <u>Security Management.</u>  The Service Provider shall appoint a senior official to act as the Agreement Security Officer.  The individual will interface with the COTR on all security matters, to include physical, personnel, and protection of all Government information and data accessed by the Service Provider.

The COTR and Contracting Officer shall have the right to inspect the procedures, methods, all documentation and facilities utilized by the Service Provider in complying with the security requirements under this Agreement. Should ICE determine that the Service Provider is not complying with the security requirements of this Agreement, the Service Provider shall be informed in writing by the Contracting Officer of the proper action to be taken in order to effect compliance with these employment screening requirements.

**Article IX. Period of Performance**

7

A. This Agreement shall become effective upon the date of final signature by the ICE Contracting Officer and the authorized signatory of the Service Provider and will remain in effect indefinitely unless terminated in writing by either party. Either party must provide written notice of intention to terminate the agreement, 60 days in advance of the effective date of formal termination, or the Parties may agree to a shorter period under the procedures prescribed in Article XI.

B. Basis for Price Adjustment: A firm fixed price with economic adjustment provides for upward and downward revision of the stated Per Diem based upon cost indexes of labor and operating expenses, or based upon the Service Provider's actual cost experience in providing the service.

## Article X. Inspection

A. Jail Agreement Inspection Report: The Jail Agreement Inspection Report stipulates minimum requirements for fire/safety code compliance, supervision, segregation, sleeping utensils, meals, medical care, confidential communication, telephone access, legal counsel, legal library, visitation, and recreation. The Service Provider shall allow ICE to conduct inspections of the facility, as required, to ensure an acceptable level of services and acceptable conditions of confinement as determined by ICE. No notice to the Service Provider is required prior to an inspection. ICE will conduct such inspections in accordance with the Jail Agreement Inspection Report. ICE will share findings of the inspection with the Service Provider's facility administrator. The Inspection Report will state any improvements to facility operation, conditions of confinement, and level of service that will be required by the Service Provider.

B. Possible Termination: If the Service Provider fails to remedy deficient service identified through an ICE inspection, ICE may terminate this Agreement without regard to the provisions of Articles IX and XI.

C. Share Findings: The Service Provider shall provide ICE copies of facility inspections, reviews, examinations, and surveys performed by accreditation sources.

D. Access to Detainee Records: The Service Provider shall, upon request, grant ICE access to any record in its possession, regardless of whether the Service Provider created the record, concerning any detainee held pursuant to this Agreement. This right of access shall include, but is not limited to, incident reports, records relating to suicide attempts, and behavioral assessments and other records relating to the detainee's behavior while in the Service Provider's custody. Furthermore, the Service Provider shall retain all records where this right of access applies for a period of two (2) years from the date of the detainee's discharge from the Service Provider's custody.

## Article XI. Modifications and Disputes

A. Modifications: Actions other than those designated in this Agreement will not bind or incur liability on behalf of either Party. Either Party may request a modification to this Agreement by submitting a written request to the other Party. A modification will become a part of this Agreement only after the ICE Contracting Officer and the authorized signatory of the Service Provider have approved the modification in writing.

B. Disputes: The ICE Contracting Officer and the authorized signatory of the Service Provider will settle disputes, questions and concerns arising from this Agreement. Settlement of disputes shall

be memorialized in a written modification between the ICE Contracting Officer and authorized signatory of the Service Provider. In the event a dispute is not able to be resolved between the Service Provider and the ICE Contracting Officer, the ICE Contracting Officer will make the final decision. If the Service Provider does not agree with the final decision, the matter may be appealed to the ICE Head of the Contracting Activity (HCA) for resolution. The ICE HCA may employ all methods available to resolve the dispute including alternative dispute resolution techniques. The Service Provider shall proceed diligently with performance of this Agreement pending final resolution of any dispute.

## Article XII. Adjusting the Detainee Day Rate

ICE shall reimburse the Service Provider at the fixed detainee day rate shown on the cover page of the document, Article I. (C). The Parties may adjust the rate twenty-four (24) months after the effective date of the agreement and every twelve (12) months thereafter. The Parties shall base the cost portion of the rate adjustment on the principles of allowability and allocability as set forth in OMB Circular A-87, federal procurement laws, regulations, and standards in arriving at the detainee day rate. The request for adjustment shall be submitted on an ICE Jail Services Cost Statement. If ICE does not receive an official request for a detainee day rate adjustment that is supported by an ICE Jail Services Cost Statement, the fixed detainee day rate as stated in this Agreement will be in place indefinitely. See Article XI A.

ICE reserves the right to audit the actual and/or prospective costs upon which the rate adjustment is based. All rate adjustments are prospective. As this is a fixed rate agreement, there are **no** retroactive adjustment(s).

## Article XIII. Enrollment, Invoicing, and Payment

A. Enrollment in Electronic Funds Transfer: The Service Provider shall provide ICE with the information needed to make payments by electronic funds transfer (EFT). Since January 1, 1999, ICE makes all payments only by EFT. The Service Provider shall identify their financial institution and related information on Standard Form 3881, Automated Clearing House (ACH) Vendor Miscellaneous Payment Enrollment Form. The Service Provider shall submit a completed SF 3881 to ICE payment office prior to submitting its initial request for payment under this Agreement. If the EFT data changes, the Service Provider shall be responsible for providing updated information to the ICE payment office.

B. Invoicing: The Service Provider shall submit an original itemized invoice containing the following information: the name and address of the facility; the name of each ICE detainee; detainee's A-number; specific dates of detention for each detainee; the total number of detainee days; the daily rate; the total detainee days multiplied by the daily rate; an itemized listing of all other charges; and the name, title, address, and phone number of the local official responsible for invoice preparation. The Service Provider shall submit monthly invoices within the first ten (10) working days of the month following the calendar month when it provided the services, to:

Department of Homeland Security
ATTN: Immigration and Customs Enforcement
Deportation Unit 7 Removal
JFK Federal Building
Government Center, Room 1775
Boston, MA 02203

███████████

C.   Payment:  ICE will transfer funds electronically through either an Automated Clearing House subject to the banking laws of the United States, or the Federal Reserve Wire Transfer System. The Prompt Payment Act applies to this Agreement. The Prompt Payment Act requires ICE to make payments under this Agreement the thirtieth (30th) calendar day after the ICE Deportation office receives a complete invoice. Either the date on the Government's check, or the date it executes an electronic transfer of funds, shall constitute the payment date. The Prompt Payment Act requires ICE to pay interest on overdue payments to the Service Provider. ICE will determine any interest due in accordance with the Prompt Payment Act.

## Article XIV. Government Furnished Property

A.   Federal Property Furnished to the Service Provider: ICE may furnish Federal Government property and equipment to the Service Provider. Accountable property remains titled to ICE and shall be returned to the custody of ICE upon termination of the Agreement. The suspension of use of bed space made available to ICE is agreed to be grounds for the recall and return of any or all government furnished property.

B.   Service Provider Responsibility: The Service Provider shall not remove ICE property from the facility without the prior written approval of ICE. The Service Provider shall report any loss or destruction of any Federal Government property immediately to ICE.

## Article XV. Hold Harmless and Indemnification Provisions

A.   Service Provider Held Harmless:  ICE shall, subject to the availability of funds, save and hold the Service Provider harmless and indemnify the Service Provider against any and all liability claims and costs of whatever kind and nature, for injury to or death of any person(s), or loss or damage to any property, which occurs in connection with or is incident to performance of work under the terms of this Agreement, and which results from negligent acts or omissions of ICE officers or employees, to the extent that ICE would be liable for such negligent acts or omissions under the Federal Tort Claims Act, 28 USC 2691 *et seq.*

B.   Federal Government Held Harmless: The Service Provider shall save and hold harmless and indemnify federal government agencies to the extent allowed by law against any and all liability claims, and costs of whatsoever kind and nature for injury to or death of any person or persons and for loss or damage to any property occurring in connection with, or in any way incident to or arising out of the occupancy, use, service, operation or performance of work under the tenets of this Agreement, resulting from the negligent acts or omissions of the Service Provider, or any employee, or agent of the Service Provider. In so agreeing, the Service Provider does not waive any defenses, immunities or limits of liability available to it under state or federal law.

10

C. Defense of Suit:  In the event a detainee files suit against the Service Provider contesting the legality of the detainee's incarceration and/or immigration/citizenship status, ICE shall request that the U.S. Attorney's Office, as appropriate, move either to have the Service Provider dismissed from such suit, to have ICE substituted as the proper party defendant; or to have the case removed to a court of proper jurisdiction. Regardless of the decision on any such motion, ICE shall request that the U.S. Attorney's Office be responsible for the defense of any suit on these grounds.

D. ICE Recovery Right:  The Service Provider shall do nothing to prejudice ICE's right to recover against third parties for any loss, destruction of, or damage to U.S. Government property. Upon request of the Contracting Officer, the Service Provider shall, at ICE's expense, furnish to ICE all reasonable assistance and cooperation, including assistance in the prosecution of suit and execution of the instruments of assignment in favor of ICE in obtaining recovery.

## Article XVI. Financial Records

A. Retention of Records:  All financial records, supporting documents, statistical records, and other records pertinent to contracts or subordinate agreements under this Agreement shall be retained by the Service Provider for three (3) years for purposes of federal examinations and audit. The three (3) year retention period begins at the end of the first year of completion of service under the Agreement. If any litigation, claim, negotiation, audit, or other action involving the records has been started before the expiration of the three (3) year period, the records must be retained until completion of the action and resolution of all issues which arise from it or until the end of the regular three (3) year period, whichever is later.

B. Access to Records:  ICE and the Comptroller General of the United States, or any of their authorized representatives, shall have the right of access to any pertinent books, documents, papers or other records of the Service Provider or its sub-contractors, which are pertinent to the award, in order to make audits, examinations, excerpts, and transcripts. The rights of access must not be limited to the required retention period, but shall last as long as the records are retained.

C. Delinquent Debt Collection:  ICE will hold the Service Provider accountable for any overpayment, or any breach of this Agreement that results in a debt owed to the Federal Government. ICE shall apply interest, penalties, and administrative costs to a delinquent debt owed to the Federal Government by the Service Provider pursuant to the Debt Collection Improvement Act of 1982, as amended.

## Article XVII. Guard/Transportation Services

A. Transport Services Rate:  The Service Provider agrees, upon request of the Federal Government in whose custody an ICE detainee is held, to provide all such air/ground transportation services as may be required to transport detainees securely, in a timely manner, to locations as directed by the ICE COTR or designated ICE official.  Transportation between the facility and ICE offices, plus related mileage is included in the daily per diem rate.  Other ICE directed transportation will be reimbursed at the rate of $26.21 per hour.  Transportation mileage shall be reimbursed at the mileage rate established pursuant to the current General Services Administration (GSA)/federal travel allowance rates.  Any incurred overtime pay for such services will be reimbursed at the applicable overtime rate $39.10 of per hour.   At least two (2) qualified law enforcement or

11

correctional officer personnel employed by the Service Provider under their policies, procedures and practices will perform transport services.

B. <u>Medical Transportation:</u>  Transportation and/or escort/stationary guard services for ICE detainees housed at the Service Provider's facility to and from a medical facility for outpatient care, and transportation and/or escort guard services for ICE detainees housed at the Service Provider's facility admitted to a medical facility; and to detainees attending off-site court proceedings. An officer or officers, shall keep the detainee under constant supervision twenty-four (24) hours per day until the detainee is ordered released from the hospital, or at the order of the COTR. The Service Providers agrees to augment such practices as may be requested by ICE to enhance specific requirements for security, detainee monitoring, visitation and contraband control.

C. <u>Indemnities:</u>  Furthermore, the Service Provider agrees to hold harmless and indemnify DHS/ICE and its officials in their official and individual capacities from any liability, including third-party liability or worker's compensation, arising from the conduct of the Service Provider and its employees during the course of transporting ICE detainees.

D. <u>Personal Vehicles:</u>  The Service Provider shall not allow employees to use their personal vehicles to transport detainees.  The Service Provider shall furnish vehicles equipped with interior security features including physical separation of detainees from guards.  The Service Provider shall provide interior security specifications of the vehicles to ICE for review and approval prior to installation.

E. <u>Training and Compliance:</u>  The Service Provider shall comply with ICE transportation standards (http://www.ice.gov/partners/dro/opsmanual/index.htm) related to the number of hours the Provider's employee may operate a vehicle.  The transportation shall be accomplished in the most economical manner.  The Service Provider personnel provided for the above services shall be of the same qualifications, receive training, complete the same security clearances, and wear the same uniforms as those personnel provided for in other areas of this agreement.

F. <u>Same Sex Transport:</u>  During all transportation activities, at least one (1) officer shall be the same sex as the detainee.  Questions concerning guard assignments shall be directed to the COTR for
G. final determination.

H. <u>Miscellaneous Transportation:</u>  The COTR may direct the Service Provider to transport detainees to unspecified, miscellaneous locations.

I. <u>Billing Procedures:</u>  The itemized monthly invoice for such stationary guard services shall state the number of hours being billed, the duration of the billing (times and dates) and the name of the detainee(s) that was guarded.

## Article XVIII.  Contracting Officer's Technical Representative

The Contracting Officer's Technical Representative (COTR) for this Agreement is will be appointed by the Contracting Officer for this agreement. When and if the COTR duties are reassigned, an administrative modification will be issued to reflect the changes. This designation does not include authority to sign contractual documents or to otherwise commit to, or issue changes, which could affect the price, quantity, or performance of this Agreement.

12

IN WITNESS WHEREOF, the undersigned, duly authorized officers, have subscribed their names on behalf of the Bristol County Sheriff and Department of Homeland Security, U.S. Immigration and Customs Enforcement.

ACCEPTED:                                              ACCEPTED:

U.S. Immigration and Customs Enforcement      Bristol County Sheriff Office

Susan D. Erickson                                     Name
Contracting Officer                                   Title

By:                                                   By:

Date:  9/27/2007                                      Date:

The Intergovernmental Service Agreement Number Is DROIGSA-O7-003Z

13

PAGE IS LEFT INTENTIONALLY BLANK

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 13 |
| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (if applicable) | |
| P00001 | See Block 15C | | | | |
| 6. ISSUED BY                  CODE | ICE/DM/DC-DC | 7. ADMINISTERED BY (if other than Item 6)          CODE | | ICE/DM/DC-DC | |

6. ISSUED BY

ICE/Detent Mngt/Detent Contracts-DC
Immigration and Customs Enforcement
Office of Acquisition Management
425 I Street NW, Suite 2208
Washington DC 20536

7. ADMINISTERED BY

ICE/Detent Mngt/Detent Contracts-DC
Immigration and Customs Enforcement
Office of Acquisition Management
425 I Street NW, Suite 2208
Washington DC 20536

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | (x) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|
| BRISTOL COUNTY SHERIFFS OFFICE<br>400 FAUNCE CORNER RD<br>NORTH DARTHMOUTH MA 02747-1275 | | 9B. DATED (SEE ITEM 11) |
| | x | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>DROIGSA-07-0032/ |
| | | 10B. DATED (SEE ITEM 11)<br>09/27/2007 |
| CODE  0460001421000 | FACILITY CODE | |

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers    ☐ is extended.    ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (if required)

13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER (Specify type of modification and authority) |
| X | Mutual Agreement for both Parites |

Contractor    ☐ is not.    ☒ is required to sign this document and return _____ 1 _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

DUNS Number:    556747269

The purpose of this modification is to incorporate Title 29, Part 4 Labor Standards for Federal Service Contract clause and the prevailing Wage Determination for Bristol County into the Inter-Governmental Service Agreement (IGSA) number DROIGSA-07-0032.

a)  Title 29, Part 4 Labor Standards for Federal Service Contract clause is hereby incorporated into the referenced IGSA as per Attachment I, to this modification.

b)  The Wage Determination Number 2007-0550, Revision 1, dated 10/29/2007, with adopted Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| THOMAS M. HODGSON, SHERIFF | | Susan D. Erickson | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | 1-10-08 | (Signature of Contracting Officer) | 1/11/08 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DROIGSA-07-0032//P00001 | | | | PAGE<br>2 | OF<br>13 |

NAME OF OFFEROR OR CONTRACTOR
BRISTOL COUNTY SHERIFFS OFFICE

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | wage rates and benefits for Bristol County is hereby incorporated into the referenced IGSA per enclosed Attachment II, to this modification.<br><br>c) The language under Article XI Adjusting the Detainee Day Rate  is change to read as follows:<br><br><br>From:<br>Article XI Adjusting  the Detainee Day Rate<br><br>ICE shall reimburse the Service Provider at the fixed detainee day rate shown on the cover page of the document, Article I. (C).  The Parties may adjust the rate twenty-four (24) months after the effective date of the agreement and every twelve (12) months thereafter.  The Parties shall base the cost portion of the rate adjustment on the principles of allowability and allocability as set forth in OMB Circular A-87, federal procurement laws, regulations, and standards in arriving at the detainee day rate.  The request for adjustment shall be submitted on an ICE Jail Services Cost Statement.  If ICE does not receive an official request for a detainee day rate adjustment that is supported by an ICE Jail Services Cost Statement, the fixed detainee day rate as stated in this Agreement will be in place indefinitely.  See Article XI A.<br><br>To:<br>Article XI Adjusting  the Detainee Day Rate<br><br>ICE shall reimburse the Service Provider at the fixed detainee day rate shown on the cover page of the document, Article I. (C).  The Parties may adjust the rate twelve (12) months after the effective date of the agreement and every twelve (12) months thereafter.  The Parties shall base the cost portion of the rate adjustment on the principles of allowability and allocability as set forth in OMB Circular A-87, federal procurement laws, regulations, and standards in arriving at the detainee day rate.  The request for adjustment shall be submitted on an ICE Jail Services Cost Statement.  If ICE does not receive an official request for a detainee day rate adjustment that is supported by an ICE Jail Services Cost Statement, the fixed detainee day<br>Continued ... | | | | |

OPTIONAL FORM 336 (4-86)<br>Sponsored by GSA<br>FAR (48 CFR) 53.110

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED | PAGE | OF |
|---|---|---|---|
| | DROIGSA-07-0032//P00001 | 3 | 13 |

NAME OF OFFEROR OR CONTRACTOR
BRISTOL COUNTY SHERIFFS OFFICE

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | rate as stated in this Agreement will be in place indefinitely.  See Article XI A. | | | | |
| | (d)  All other terms and conditions within the referenced IGSA remains the same. | | | | |
| | POC: Susan Erickson, Contracting Officer - (202)-514-9857 | | | | |

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

1/8/2008

**TITLE 29--LABOR**

**PART 4-LABOR STANDARDS FOR FEDERAL SERVICE CONTRACTS--Table of Contents**

Subpart A Service Contract Labor Standards Provisions and Procedures

Sec.  4.6 Labor standards clauses for Federal service contracts exceeding $2,500.

The clauses set forth in the following paragraphs shall be included in full by the contracting agency in every contract/Inter-Governmental Service Agreement (IGSA) entered into by the United States or the District of Columbia, in excess of $2,500, or in an indefinite amount, the principal purpose of which is to furnish services through the use of service employees:

(a) Service Contract Act of 1965, as amended: This contract/IGSA is subject to the Service Contract Act of 1965 as amended (41 U.S.C. 351 et seq.) and is subject to the following provisions and to all other applicable provisions of the Act and regulations of the Secretary of Labor issued there under (29 CFR part 4).

(b)(1) Each service employee employed in the performance of this Contract/IGSA by the contractor or any subcontractor shall be paid not less than the minimum monetary wages and shall be furnished fringe benefits in accordance with the wages and fringe benefits determined by the Secretary of Labor or authorized representative, as specified in any wage determination attached to this contract.

(2)(i) If there is such a wage determination attached to this Contract/IGSA, the contracting officer shall require that any class of service employee which is not listed therein and which is to be employed under the Contract/IGSA (i.e., the work to be performed is not performed by any classification listed in the wage determination), be classified by the contractor so as to provide a reasonable relationship (i.e., appropriate level of skill comparison) between such unlisted classifications and the classifications listed in the wage determination. Such conformed class of employees shall be paid the monetary wages and furnished the fringe benefits as are determined pursuant to the procedures in this section.

(ii)Such conforming procedure shall be initiated by the contractor prior to the performance of contract/IGSA work by such unlisted class of employee. A written report of the proposed conforming action, including information regarding the agreement or disagreement of the authorized representative of the employees involved or, where there is no authorized representative, the employees themselves, shall be submitted by the contractor to the contracting officer no later than 30 days after such unlisted class of employees performs any Contract/IGSA work. The contracting officer shall review the proposed action and promptly submit a report of the action, together with the agency's recommendation and all pertinent information including the position of the contractor and the employees, to the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, for review. The Wage and Hour Division will approve, modify, or disapprove the action or render a final determination in the event of disagreement

1/8/2008

within 30 days of receipt or will notify the contracting officer within 30 days of receipt that additional time is necessary.

(iii) The final determination of the conformance action by the Wage and Hour Division shall be transmitted to the contracting officer who shall promptly notify the contractor of the action taken. Each affected employee shall be furnished by the contractor with a written copy of such determination or it shall be posted as a part of the wage determination.

(iv)(A) The process of establishing wage and fringe benefit rates that bears a reasonable relationship to those listed in a wage determination cannot be [[Page 41]] reduced to any single formula. The approach used may vary from wage determination to wage determination depending on the circumstances. Standard wage and salary administration practices, which rank various job classifications by pay grade pursuant to point schemes or other job factors may, for example, be relied upon. Guidance may also be obtained from the way different jobs are rated under Federal pay systems (Federal Wage Board Pay System and the General Schedule) or from other wage determinations issued in the same locality. Basic to the establishment of any conformable wage rate(s) is the concept that a pay relationship should be maintained between job classifications based on the skill required and the duties performed.

(B) In the case of a Contract/IGSA modification, an exercise of an option or extension of an existing contract, or in any other case where a contractor succeeds a Contract/IGSA under which the classification question was previously conformed pursuant to this section, a new conformed wage rate and fringe benefits may be assigned to such conformed classification by indexing (i.e., adjusting) the previous conformed rate and fringe benefits by an amount equal to the average (mean) percentage increase (or decrease, where appropriate) between the wages and fringe benefits specified for all classifications to be used on the Contract/IGSA which are listed in the current wage determination, and those specified for the corresponding classifications in the previously applicable wage determination. Where conforming actions are accomplished in accordance with this paragraph prior to the performance of Contract/IGSA work by the unlisted class of employees, the contractor shall advise the contracting officer of the action taken but the other procedures in paragraph (b) (2) (ii) of this section need not be followed.

(C) No employee engaged in performing work on this Contract/IGSA shall in any event be paid less than the currently applicable minimum wage specified under section 6(a) (1) of the Fair Labor Standards Act of 1938, as amended. (v) The wage rate and fringe benefits finally determined pursuant to paragraphs (b)(2)(i) and (ii) of this section shall be paid to all employees performing in the classification from the first day on which Contract/IGSA work is performed by them in the classification. Failure to pay such unlisted employees the compensation agreed upon by the interested parties and/or finally determined by the Wage and Hour Division retroactive to the date such class of employees commenced Contract/IGSA work shall be a violation of the Act and this contract.(vi) Upon discovery of failure to comply with paragraphs (b)(2)(i) through (v) of this section, the Wage and Hour Division shall make a final determination of conformed classification, wage rate,

1/8/2008

and/or fringe benefits which shall be retroactive to the date such
class of employees commenced Contract/IGSA work.

(3) If, as authorized pursuant to section 4(d) of the Service Contract
Act of 1965 as amended, the term of this Contract/IGSA is more than 1
year, the minimum monetary wages and fringe benefits required to be
paid or furnished there under to service employees shall be subject
adjustment after 1 year and not less often than once every 2 years,
pursuant to wage determinations to be issued by the Wage and Hour
Division, Employment Standards Administration of the Department of
Labor as provided in such Act.

(c) The contractor or subcontractor may discharge the obligation to
furnish fringe benefits specified in the attachment or determined
conformably thereto by furnishing any equivalent combinations of bona
fide fringe benefits, or by making equivalent or differential payments
in cash in accordance with the applicable rules set forth in subpart D
of 29 CFR part 4, and not otherwise.

(d)(1) In the absence of a minimum wage attachment for this contract,
neither the contractor nor any subcontractor under this Contract/IGSA
shall pay any person performing work under the Contract/IGSA
(regardless of whether they are service employees) less than the
minimum wage specified by section 6(a)(1) of the Fair Labor Standards
Act of 1938. Nothing in this provision shall relieve the contractor or
any subcontractor of any other obligation under [[Page 42]] law or
Contract/IGSA for the payment of a higher wage to any employee.

(2) If this Contract/IGSA succeeds a contract, subject to the Service
Contract Act of 1965 as amended, under which substantially the same
services were furnished in the same locality and service employees were
paid wages and fringe benefits provided for in a collective bargaining
agreement, in the absence of the minimum wage attachment for this
Contract/IGSA setting forth such collectively bargained wage rates and
fringe benefits, neither the contractor nor any subcontractor under
this Contract/IGSA shall pay any service employee performing any of the
Contract/IGSA work (regardless of whether or not such employee was
employed under the predecessor contract), less than the wages and
fringe benefits provided for in such collective bargaining agreements,
to which such employee would have been entitled if employed under the
predecessor contract, including accrued wages and fringe benefits and
any prospective increases in wages and fringe benefits provided for
under such agreement. No contractor or subcontractor under this
Contract/IGSA may be relieved of the foregoing obligation unless the
limitations of Sec. 4.1b(b) of 29 CFR part 4 apply or unless the
Secretary of Labor or his authorized representative finds, after a
hearing as provided in Sec. 4.10 of 29 CFR part 4 that the wages and/or
fringe benefits provided for in such agreement are substantially at
variance with those which prevail for services of a character similar
in the locality, or determines, as provided in Sec.  4.11 of 29 CFR
part 4, that the collective bargaining agreement applicable to service
employees employed under the predecessor Contract/IGSA was not entered
into as a result of arm's-length negotiations. Where it is found in
accordance with the review procedures provided in 29 CFR 4.10 and/or
4.11 and parts 6 and 8 that some or all of the wages and/or fringe
benefits contained in a predecessor contractor's collective bargaining
agreement are substantially at variance with those which prevail for

services of a character similar in the locality, and/or that the collective bargaining agreement applicable to service employees employed under the predecessor Contract/IGSA was not entered into as a result of arm's-length negotiations, the Department will issue a new or revised wage determination setting forth the applicable wage rates and fringe benefits. Such determination shall be made part of the Contract/IGSA or subcontract, in accordance with the decision of the Administrator, the Administrative Law Judge, or the Administrative Review Board, as the case may be, irrespective of whether such issuance occurs prior to or after the award of a Contract/IGSA or subcontract. 53 Comp. Gen. 4●1 (1973). In the case of a wage determination issued solely as a result of a finding of substantial variance, such determination shall be effective as of the date of the final administrative decision.

(e) The contractor and any subcontractor under this Contract/IGSA shall notify each service employee commencing work on this Contract/IGSA of the minimum monetary wage and any fringe benefits required to be paid pursuant to this contract, or shall post the wage determination attached to this contract. The poster provided by the Department of Labor (Publication WH 1313) shall be posted in a prominent and accessible place at the worksite. Failure to comply with this requirement is a violation of section 2(a) (4) of the Act and of this contract.

(f) The contractor or subcontractor shall not permit any part of the services called for by this Contract/IGSA to be performed in buildings or surroundings or under working conditions provided by or under the control or supervision of the contractor or subcontractor which are unsanitary or hazardous or dangerous to the health or safety of service employees engaged to furnish these services, and the contractor or subcontractor shall comply with the safety and health standards applied under 29 CFR part 1925.

(g)(1) The contractor and each subcontractor performing work subject to the Act shall make and maintain for 3 years from the completion of the work records containing the information specified in paragraphs (g)(1) (i) through (vi) of this section for each employee subject to the Act and shall make them available for inspection [[Page 43]] and transcription by authorized representatives of the Wage and Hour Division, Employment Standards Administration of the U.S. Department of Labor:

(i) Name and address and social security number of each employee.

(ii)The correct work classification or classifications, rate or rates of monetary wages paid and fringe benefits provided, rate or rates of fringe benefit payments in lieu thereof, and total daily and weekly compensation of each employee.

(iii) The number of daily and weekly hours so worked by each employee.

(iv) Any deductions, rebates, or refunds from the total daily or weekly compensation of each employee.

(v) A list of monetary wages and fringe benefits for those classes of service employees not included in the wage

1/8/2008

determination attached to this Contract/IGSA but for which such wage rates or fringe benefits have been determined by the interested parties or by the Administrator or authorized representative pursuant to the labor standards clause in paragraph (b) of this section. A copy of the report required by the clause in Paragraph (b) (2) (ii) of this section shall be deemed to be such a list.

(vi) Any list of the predecessor contractor's employees which had been furnished to the contractor pursuant to Sec. 4.6(l)(2).

(2) The contractor shall also make available a copy of this Contract/IGSA for inspection or transcription by authorized representatives of the Wage and Hour Division.

(3) Failure to make and maintain or to make available such records for inspection and transcription shall be a violation of the regulations and this contract, and in the case of failure to produce such records, the contracting officer, upon direction of the Department of Labor and notification of the contractor, shall take action to cause suspension of any further payment or advance of funds until such violation ceases.

(4) The contractor shall permit authorized representatives of the Wage and Hour Division to conduct interviews with employees at the worksite during normal working hours.

(h) The contractor shall unconditionally pay to each employee subject to the Act all wages due free and clear and without subsequent deduction (except as otherwise provided by law or Regulations, 29 CFR part 4), rebate, or kickback on any account. Such payments shall be made no later than one pay period following the end of the regular pay period in which such wages were earned or accrued. A pay period under this Act may not be of any duration longer than semi-monthly.

(i) The contracting officer shall withhold or cause to be withheld from the Government prime contractor under this or any other Government Contract/IGSA with the prime contractor such sums as an appropriate official of the Department of Labor requests or such sums as the contracting officer decides may be necessary to pay underpaid employees employed by the contractor or subcontractor. In the event of failure to pay any employees subject to the Act all or part of the wages or fringe benefits due under the Act, the agency may, after authorization or by direction of the Department of Labor and written notification to the contractor, take action to cause suspension of any further payment or advance of funds until such violations have ceased. Additionally, any failure to comply with the requirements of these clauses relating to the Service Contract Act of 1965, may be grounds for termination of the right to proceed with the Contract/IGSA work. In such event, the Government may enter into other contracts or arrangements for completion of the work, charging the contractor in default with any additional cost.

(j) The contractor agrees to insert these clauses in this section relating to the Service Contract Act of 1965 in all Subcontracts subject to the Act. The term contractor as used in these clauses in any subcontract shall be deemed to refer to the subcontractor, except in the term Government prime contractor.

1/8/2008

(k)(1) As used in these clauses, the term service employee means any
person engaged in the performance of this Contract/IGSA other than any
person employed in a bona fide executive, administrative, or
professional capacity, as those terms are defined in part 541 of title
29, Code of Federal Regulations, as of July [[Page44]] 30, 1976, and
any subsequent revision of those regulations. The term service employee
includes all such persons regardless of any contractual relationship
that may be alleged to exist between a contractor or subcontractor and
such persons.

(2) The following statement is included in contracts pursuant to
section 2(a) (5) of the Act and is for informational purposes only:

The following classes of service employees expected to be employed
under the Contract/IGSA with the Government would be subject, if
employed by the contracting agency, to the provisions of 5 U.S.C. 5341
or 5 U.S.C. 5332 and would, if so employed, be paid not less than the
following rates of wages and fringe benefits:

| Employee class | wage-fringe benefit |
| --- | --- |
| GS-05 | $15.42 |
| GS-07 | $19.10 |

Search current rates at http://www.opm.gov/oca/08tables/

(l)(1) If wages to be paid or fringe benefits to be furnished any
service employees employed by the Government prime contractor or any
subcontractor under the Contract/IGSA are provided for in a collective
bargaining agreement which is or will be effective during any period in
which the Contract/IGSA is being performed, the Government prime
contractor shall report such fact to the contracting officer, together
with full information as to the application and accrual of such wages
and fringe benefits, including any prospective increases, to service
employees engaged in work on the contract, and a copy of the collective
bargaining agreement. Such report shall be made upon commencing
performance of the contract, in the case of collective bargaining
agreements effective at such time, and in the case of such agreements
or provisions or amendments thereof effective at a later time during
the period of Contract/IGSA performance, such agreements shall be
reported promptly after negotiation thereof.

(2) Not less than 10 days prior to completion of any Contract/IGSA
being performed at a Federal facility where service employees may be
retained in the performance of the succeeding Contract/IGSA and subject
to a wage determination which contains vacation or other benefit
provisions based upon length of service with a contractor (predecessor)
or successor (Sec. 4.173 of Regulations, 29 CFR part 4), the incumbent
prime contractor shall furnish to the contracting officer a certified
list of the names of all service employees on the contractor's or
subcontractor's payroll during the last month of Contract/IGSA
performance. Such list shall also contain anniversary dates of
employment on the Contract/IGSA either with the current or predecessor
contractors of each such service employee. The contracting officer
shall turn over such list to the successor contractor at the
commencement of the succeeding contract.

(m) Rulings and interpretations of the Service Contract Act of 1965, as amended, are contained in Regulations, 29 CFR part 4.

(n)(1) By entering into this contract, the contractor (and officials thereof) certifies that neither it (nor he or she) nor any person or firm who has a substantial interest in the contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of the sanctions imposed pursuant to section 5 of the Act.

(2) No part of this Contract/IGSA shall be subcontracted to any person or firm ineligible for award of a Government Contract/IGSA pursuant to section 5 of the Act.

(3) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

(o) Notwithstanding any of the clauses in paragraphs (b) through (m) of this section relating to the Service Contract Act of 1965, the following employees may be employed in accordance with the following variations, tolerances, and exemptions, which the Secretary of Labor, pursuant to section 4(b) of the Act prior to its amendment by Public Law 92-473, found to be necessary and proper in the public interest or to avoid serious impairment of the conduct of Government business:

(1)Apprentices, student-learners, and workers whose earning capacity is impaired by age, physical, or mental deficiency or injury may be employed at wages lower than the minimum wages otherwise required by section 2(a) (1) or([Page 45]]

(2)(b)(1) of the Service Contract Act without diminishing any fringe benefits or cash payments in lieu thereof required under section 2(a) (2) of that Act, in accordance with the conditions and procedures prescribed for the employment of apprentices, student-learners, handicapped persons, and handicapped clients of sheltered workshops under section 14 of the Fair Labor Standards Act of 1938, in the regulations issued by the Administrator (29 CFR parts 520, 521, 524, and 525).

(3) The Administrator will issue certificates under the Service Contract Act for the employment of apprentices, student-learners, handicapped persons, or handicapped clients of sheltered workshops not subject to the Fair Labor Standards Act of 1938, or subject to different minimum rates of pay under the two acts, authorizing appropriate rates of minimum wages (but without changing requirements concerning fringe benefits or supplementary cash payments in lieu thereof), applying procedures prescribed by the applicable regulations issued under the Fair Labor Standards Act of 1938 (29 CFR parts 520, 521, 524, and 525).

(4) The Administrator will also withdraw, annul, or cancel such certificates in accordance with the regulations in parts 525 and 528 of title 29 of the Code of Federal Regulations.

(p) Apprentices will be permitted to work at less than the predetermined rate for the work they perform when they are employed and individually registered in a bona fide apprenticeship program registered with a State Apprenticeship Agency which is recognized by

the U.S. Department of Labor, or if no such recognized agency exists in a State, under a program registered with the Bureau of Apprenticeship and Training, Employment and Training Administration, U.S. Department of Labor. Any employee who is not registered as an apprentice in an approved program shall be paid the wage rate and fringe benefits contained in the applicable wage determination for the journeyman classification of work actually performed. The wage rates paid apprentices shall not be less than the wage rate for their level of progress set forth in the registered program, expressed as the appropriate percentage of the journeyman's rate contained in the applicable wage determination. The allowable ratio of apprentices to journeymen employed on the Contract/IGSA work in any craft classification shall not be greater than the ratio permitted to the contractor as to his entire work force under the registered program.

(q) Where an employee engaged in an occupation in which he or she customarily and regularly receives more than $30 a month in tips, the amount of tips received by the employee may be credited by the employer against the minimum wage required by Section 2(a)(1) or 2(b)(1) of the Act to the extent permitted by section 3(m) of the Fair Labor Standards Act and Regulations, 29 CFR Part 531. To utilize this provison:

(1)The employer must inform tipped employees about this tip credit allowance before the credit is utilized;

(2)The employees must be allowed to retain all tips (individually or through a pooling arrangement and regardless of whether the employer elects to take a credit for tips received);

(3) The employer must be able to show by records that the employee receives at least the applicable Service Contract Act minimum wage through the combination of direct wages and tip credit;

(4) The use of such tip credit must have been permitted under any predecessor collective bargaining agreement applicable by virtue of section 4(c) of the Act.

(r) Disputes concerning labor standards. Disputes arising out of the labor standards provisions of this Contract/IGSA shall not be subject to the general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR parts 4, 6, and 8. Disputes within the meaning of this clause include disputes between the contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.(The information collection, recordkeeping, and reporting requirements contained in this section have been approved by the Office of Management and Budget under the following numbers:
[[Page 46]]

---

| - Paragraph | OMB control number |
| --- | --- |
| (b)(2) (i)--(iv)...................................... | 1215-0150 |
| (e)................................................... | 1215-0150 |
| (g)(1) (i)--(iv)...................................... | 1215-0017 |
| (g)(1) (v), (vi)...................................... | 1215-0150 |
| (l) (1), (2)......................................... | 1215-0150 |

1/8/2008

```
(q)(3)............................................   1215-0017
-----------------------------------------------------------------
[48 FR 49762, Oct. 27, 1983; 48 FR 50529, Nov. 2, 1983, as amended at
61 FR 68663, Dec. 30, 1996]
```

REGISTER OF WAGE DETERMINATIONS UNDER
THE SERVICE CONTRACT ACT
By direction of the Secretary of Labor

U.S. DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
WAGE AND HOUR DIVISION
WASHINGTON, D.C. 20210

William W. Gross             Division of
Director                     Wage Determinations

Wage Determination No.: 2007-0550
Revision No.: 1
Date of Last Revision: 10/29/2007

State: Massachusetts

Area: Massachusetts County of Bristol

Employed on U.S. Department of Homeland Security contract agreement (IGA) for prisoner detention services between

United States Immigration and Customs Enforcement and Prisoner Operations Division and Bristol County Correctional Facility, MA

The wage rates and fringe benefits paid by above company are hereby adopted as prevailing.

NOTE: Under Section 2(b)(1) of the Service Contract Act no employees shall be paid less than the minimum wage specified by Section 6(a)(1) of the Fair Labor Standards Act; $5.85 per hour, effective July 24, 2007.

** UNIFORM ALLOWANCE **

If employees are required to wear uniforms in the performance of this contract (either by the terms of the Government contract, by the employer, by the state or local law, etc.), the cost of furnishing such uniforms and maintaining (by laundering or dry cleaning) such uniforms is an expense that may not be borne by an employee where such cost reduces the hourly rate below that required by the wage determination. The Department of Labor will accept payment in accordance with the following standards as compliance:

The contractor or subcontractor is required to furnish all employees with an adequate number of uniforms without cost or to reimburse employees for the actual cost of the uniforms. In addition, where uniform cleaning and maintenance is made the responsibility of the employee, all contractors and subcontractors subject to this wage determination shall (in the absence of a bona fide collective bargaining agreement providing for a different amount, or the furnishing of contrary affirmative proof as to the actual cost), reimburse all employees for such cleaning and maintenance at a rate of $3.35 per week (or $.67 cents per day). However, in those instances where the uniforms furnished are made of "wash and wear" materials, may be routinely washed and dried with other personal garments, and do not require any special treatment such as dry cleaning, daily washing, or commercial laundering in order to meet the cleanliness or appearance standards set by the terms of the Government contract, by the contractor, by law, or by the nature of the work, there is no requirement that employees be reimbursed for uniform maintenance costs.

Attachment II

PAGE IS LEFT INTENTIONALLY BLANK

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | 1. CONTRACT ID CODE | | PAGE  OF PAGES |
|---|---|---|---|
| | | | 1 \| 3 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| P00002 | 10/02/2008 | | |

| 6. ISSUED BY | CODE | ICE/DM/DC-DC | 7. ADMINISTERED BY (If other than Item 6) | CODE | ICE/DM/DC-DC |
|---|---|---|---|---|---|

6. ISSUED BY

ICE/Detent Mngt/Detent Contracts-DC
Immigration and Customs Enforcement
Office of Acquisition Management
425 I Street NW, Suite 2208
Washington DC 20536

7. ADMINISTERED BY

ICE/Detent Mngt/Detent Contracts-DC
Immigration and Customs Enforcement
Office of Acquisition Management
425 I Street NW, Suite 2208
Washington DC 20536

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

BRISTOL COUNTY SHERIFFS OFFICE
400 FAUNCE CORNER RD
NORTH DARTHMOUTH MA 02747-1275

(X)

| 9A. AMENDMENT OF SOLICITATION NO. |
|---|
| 9B. DATED (SEE ITEM 11) |

| x | 10A. MODIFICATION OF CONTRACT/ORDER NO. |
|---|---|
| | DROIGSA-07-0032/ |

| 10B. DATED (SEE ITEM 11) |
|---|
| 09/27/2007 |

| CODE | 0460001421000 | FACILITY CODE |
|---|---|---|

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
See Schedule

13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| CHECK ONE | | |
|---|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. | |
| X | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). | |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: | |
| | D. OTHER (Specify type of modification and authority) | |

E. IMPORTANT:   Contractor   ☒ is not,   ☐ is required to sign this document and return _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

DUNS Number:   556747269
Field Offic███████████████████
Amanda Raym███████████████████
Program POC███████████████████
M.J. Bates
OAQ POC: Jerald Neveleff, Contracting Off███████████
Arnold Casterline, Contract Specialist, ████████████


The purpose of this modification is to revise the procedure for Providers to submit their invoices for Agreement DROIGSA-07-0032.  This revised procedure is effective commencing Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| | Jerald H. Neveleff |

| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
|---|---|---|---|
| _(Signature of person authorized to sign)_ | | _(Signature of Contracting Officer)_ | 2 OCT 08 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DROIGSA-07-0032//P00002 | | | | PAGE<br>2 | OF<br>3 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
BRISTOL COUNTY SHERIFFS OFFICE

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | November 3, 2008 and pertains to all invoices submitted on that date and thereafter.<br><br>In accordance with Article XII, Enrollment, Invoicing and Payment, revise paragraph (B) "Invoicing" to read as follow:<br><br>  Invoices shall be submitted via one of the following three methods:<br><br>By mail:<br><br>DHS, ICE<br>Burlington Finance Center<br>P.O. Box 1620<br>Williston, VT  05495-1620<br>Attn:  ICE-DRO-FOD-Boston<br><br>b.   By facsimile (fax):  (include a cover sheet with point of contact & # of pages)<br><br>  802-288-7658<br><br>c.By e-mail:<br><br>  Invoice.Consolidation@dhs.gov<br><br>Invoices submitted by other than these three methods will be returned.  The contractor's Taxpayer Identification Number (TIN) must be registered in the Central Contractor Registration (http://www.ccr.gov) prior to award and shall be notated on every invoice submitted to ICE on or after Nov 3, 2008 to ensure prompt payment provisions are met.  The ICE program office shall also be notated on every invoice.<br><br>The information required with each invoice submission is as follows:<br><br>Each invoice submitted shall contain the following information:<br>the name and address of the facility;<br>Invoice date and number;<br>Agreement number, line item number and, if applicable, the Task order number;<br>Terms of any discount for prompt payment offered;<br>Name, title, and phone number of person to notify in event of defective invoice;<br>Taxpayer Identification Number (TIN).  The<br>Continued ... | | | | |

OPTIONAL FORM 336 (4-86)<br>Sponsored by GSA<br>FAR (48 CFR) 53.110

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DROIGSA-07-0032//P00002 | | | | PAGE<br>3 | OF<br>3 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
BRISTOL COUNTY SHERIFFS OFFICE

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT.<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | Contractor shall include its TIN on the invoice only if required elsewhere in this Agreement. (See paragraph 1 above.)<br>the daily rate;<br>the total number of residential/detainee days;<br>the name of each ICE resident/detainee;<br>resident's/detainee's A-number;<br>specific dates of detention for each resident/detainee;<br>the total residential/detainee days multiplied by the daily rate;<br>For stationary guard services, the itemized monthly invoice shall state the number of hours being billed, the duration of the billing (times and dates) and the name of the resident(s)/detainee(s) that was guarded.<br><br>Items (a.) through (h.) must be on the cover page of each invoice.<br><br>Invoices without the above information may be returned for resubmission.<br><br>3. All other terms and conditions remain the same. | | | | |

PAGE IS LEFT INTENTIONALLY BLANK

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| P00003 | See Block 16C | | |

| 6. ISSUED BY | CODE | ICE/DM/DC-DC | 7. ADMINISTERED BY (If other than Item 6) | CODE | ICE/DM/DC-DC |
|---|---|---|---|---|---|

6. ISSUED BY:
ICE/Detent Mngt/Detent Contracts-DC
Immigration and Customs Enforcement
Office of Acquisition Management
425 I Street NW, Suite 2208
Washington DC 20536

7. ADMINISTERED BY:
ICE/Detent Mngt/Detent Contracts-DC
Immigration and Customs Enforcement
Office of Acquisition Management
425 I Street NW, Suite 2208
Washington DC 20536

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

BRISTOL COUNTY SHERIFFS OFFICE
400 FAUNCE CORNER RD
NORTH DARTHMOUTH MA 02747-1275

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

(X) 10A. MODIFICATION OF CONTRACT/ORDER NO.
DROIGSA-07-0032/

10B. DATED (SEE ITEM 13)
09/27/2007

CODE 0460001421000    FACILITY CODE

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
See Schedule

13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

CHECK ONE
A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

X  D. OTHER (Specify type of modification and authority)
FAR 43.103 (a) Bilateral Modification

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
DUNS Number: 556747269
CONTACT INFORMATION:
Program Office: Amanda Raymond █
Contracting Officer: Matthew Marshman █
Contract Specialist: Rubina Satar (202█

The purpose of this modification is to increase the detainee bed day rate, incorporate the
ICE 2008 and 2010 Performance Based National Detention Standards (PBNDS).

The IGSA is amended as follows:

Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| | Matthew Marshman |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | 08/12/10 | (Signature of Contracting Officer) | 12 AUG 2010 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DROIGSA-07-0032//P00003 | | | | | PAGE<br>2 | OF<br>2 |

NAME OF OFFEROR OR CONTRACTOR
BRISTOL COUNTY SHERIFFS OFFICE

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | 1) The Detainee bed day rate specified in Article I is increased from $90.00 per day to $98.00 per detained day.<br><br>2) The ICE 2008 and 2010 PBNDS are incorporated as follows:<br>Remove the following language from Article III Covered Services<br><br>Consistent with there the Service Provider and routinely offered to other inmates<br><br>and replace it with:<br><br>in accordance with the most current edition of the ICE Performance Based National Detention Standards (PBNDS) found within the ICE Detention Operations Manual located at http://www.ice.gov/partners/dro/PBNDS/index.htm, and fully consistent with all applicable laws, standards, policies and procedures and court orders applicable to its facility (or facilities), unless or as specifically modified under this Agreement. This modification incorporates by reference the 2010 ICE Performance Based National Detention Standards (2010 PBNDS). The Contractor agrees to use its best efforts to comply with the minimal performance levels and also agrees to use its best efforts to attain the optimal levels of performance contained in the 2010 PBNDS.<br><br>Article V: DHS/ICE Detention Standards<br><br>The ICE National Detention Standards http://www.ice.gov/partners/dro/opsmanual/index.htm is replaced with the ICE Performance Based National Detention Standards (PBNDS) http://www.ice.gov/partners/dro/PBNDS/index.htm.<br><br>All other terms and conditions of the agreement remains the same. | | | | |

OPTIONAL FORM 336 (4-86)<br>Sponsored by GSA<br>FAR (48 CFR) 53.110

PAGE IS LEFT INTENTIONALLY BLANK

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | | 1 CONTRACT ID CODE | PAGE OF PAGES |
|---|---|---|---|---|
| | | | | 1 \| 3 |
| 2 AMENDMENT/MODIFICATION NO. | 3 EFFECTIVE DATE | | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
| P00004 | 11/01/2017 | | | |
| 6 ISSUED BY | CODE | ICE/DCR | 7. ADMINISTERED BY (If other than item 6) | CODE | ICE/DCR |

ICE/Detention Compliance & Removals
Immigration and Customs Enforcement
Office of Acquisition Management
801 I Street, NW Suite 930
WASHINGTON DC 20536

ICE/Detention Compliance & Removals
Immigration and Customs Enforcement
Office of Acquisition Management
801 I Street NW, suite 930
Washington DC 20536

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | (x) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|

BRISTOL COUNTY SHERIFFS OFFICE
400 FAUNCE CORNER RD
NORTH DARTHMOUTH MA 02747-1275

| | 9B. DATED (SEE ITEM 11) |
|---|---|
| X | 10A. MODIFICATION OF CONTRACT/ORDER NO. DROIGSA-07-0032/ |

| | 10B. DATED (SEE ITEM 13) |
|---|---|
| CODE 0460001421000 | FACILITY CODE | 09/27/2007 |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in item 14.  The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended , by one of the following methods: (a) By completing items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted ; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted , such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
See Schedule

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| CHECK ONE | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER (Specify type of modification and authority) |
| X | FAR 43.103 (a) Bilateral Modification |

E. IMPORTANT:   Contractor ☐ is not.  ☒ is required to sign this document and return _____1_____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
DUNS Number:   556747269
CONTACT INFORMATION:
Contracting Officer's Representative: Donald Granahan, ▮
▮
Contracting Officer: William Fuller, ▮
Contract Specialist: William Rees, ▮

▮▮▮▮▮▮▮▮▮▮

Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9 A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| LAWRENCE W. OLIVEIRA | William Fuller |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (signature) | 11/7/17 | (signature) | 11/8/17 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-93)
Prescribed by GSA
FAR (48 CFR) 53.243

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED | | | | PAGE | OF |
|---|---|---|---|---|---|---|
| | DROIGSA-07-0032//P00004 | | | | 2 | 3 |

NAME OF OFFEROR OR CONTRACTOR
BRISTOL COUNTY SHERIFFS OFFICE

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | date of this rate increase modification is 11/01/2017. | | | | |

As a result of this modification, the Article XVII - Guard and Transportation section of this IGSA is hereby changed as follows:

From:

A. Transportation Services Rate: The Service Provider agrees, upon request of the Federal Government in whose custody an ICE detainee is held, to provide all such air/ground transpiration services as may be required to transport detainees securely, in a timely manner, to locations as directed by the ICE COTR or designated ICE official. Transpiration between the facility and ICE offices, plus related mileage, is included in the daily per diem rate. Other ICE directed transportation will be reimbursed at the rate of ███████ per hours. Transportation mileage shall be reimbursed at the mileage rate established pursuant to the current General Services Administration (GSA)/federal travel allowance rates. Any incurred overtime pay for services will be reimbursed at the applicable overtime rate of ███████ per hour. At least two (2) qualified law enforcement or correctional officers personnel employed by the Service Provider under the policies, procedures, and practices will perform transport services.

To:

A. Transportation Services Rate: The Service Provider agrees, upon request of the Federal Government in whose custody an ICE detainee is held, to provide all such air/ground transpiration services as may be required to transport detainees securely, in a timely manner, to locations as directed by the ICE COR or designated ICE official. Transpiration between the facility and ICE offices, plus related mileage, is included in the daily per diem rate. Other ICE directed transportation will be reimbursed at the rate of $35.00 per hours. Transportation mileage shall be reimbursed at the mileage rate established pursuant to the current General Services Administration (GSA)/federal travel allowance rates. Any incurred overtime pay Continued ...

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED |||| PAGE | OF |
|---|---|---|---|---|---|---|
| | DROIGSA-07-0032//P00004 |||| 3 | 3 |

NAME OF OFFEROR OR CONTRACTOR
BRISTOL COUNTY SHERIFFS OFFICE

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | for services will be reimbursed at the applicable overtime rate ▮▮▮▮▮▮▮▮ At least two (2) qualified law enforcement or correctional officers personnel employed by the Service Provider under the policies, procedures, and practices will perform transport services. Exempt Action: N Sensitive Award: NONE All other terms and conditions of the agreement remains the same. | | | | |

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

PAGE IS LEFT INTENTIONALLY BLANK

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES 1   2 |
|---|---|---|---|---|
| 2. AMENDMENT/MODIFICATION NO. P00005 | 3. EFFECTIVE DATE See Block 16C | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (If applicable) |
| 6. ISSUED BY                CODE  ICE/DCR | | 7. ADMINISTERED BY (If other than Item 6)   CODE  ICE/DCR | | |

6. ISSUED BY
ICE/Detention Compliance & Removals
Immigration and Customs Enforcement
Office of Acquisition Management
801 I Street, NW Suite 930
WASHINGTON DC 20536

7. ADMINISTERED BY
ICE/Detention Compliance & Removals
Immigration and Customs Enforcement
Office of Acquisition Management
801 I Street NW, suite 930
Washington DC 20536

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)
BRISTOL COUNTY SHERIFFS OFFICE
400 FAUNCE CORNER RD
NORTH DARTHMOUTH MA 02747-1275

(X)
9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X  10A. MODIFICATION OF CONTRACT/ORDER NO.
DROIGSA-07-0032/

10B. DATED (SEE ITEM 13)
09/27/2007

CODE  0460001421000     FACILITY CODE

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS
[ ] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [ ] is extended. [ ] is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
See Schedule

13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

CHECK ONE
[ ] A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

[ ] B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

[X] C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:
IAW DROIGSA-07-0032

[ ] D. OTHER (Specify type of modification and authority)

E. IMPORTANT:   Contractor [ ] is not. [X] is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
DUNS Number:  556747269
CONTACT INFORMATION:
Contracting Officer's Representative: Donald Granahan,

Contracting Officer: Monali Parikh,
Contract Specialist: Amanda Stought,

The purpose of this modification is to allow U.S. Marshals Service (USMS) limited use of the Bristol County Correctional and Jail.

Add language to Article II General:
Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9 A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) LAWRENCE W. OLIVERA, CFO | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) MONALI PARIKH |
|---|---|
| 15B. CONTRACTOR/OFFEROR    _(Signature of person authorized to sign)_ | 15C. DATE SIGNED 5/14/20 | 16B. UNITED STATES OF AMERICA MONALI S PARIKH _(Signature of Contracting Officer)_ | Digitally signed by MONALI S PARIKH Date: 2020.05.14 15:37:25 -04'00' |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED DROIGSA-07-0032//F00005 | | | | PAGE 2 | OF 2 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
BRISTOL COUNTY SHERIFFS OFFICE

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | ICE grants the U.S. Marshals Service (USMS) the right to use the facility to house detainees. USMS is hereby authorized to issue its own individual task orders under this IGSA, all bed days that USMS uses shall be invoiced directly to USMS using the bed day rates established in this IGSA. Bristol has determined that USMS shall not occupy more than 50 beds per day in the facility. All other terms and conditions of the agreement remains the same. | | | | |

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

PAGE IS LEFT INTENTIONALLY BLANK

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 456 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| P00006 | See Block 16C | | |

| 6. ISSUED BY | CODE | 7OCDCR | 7. ADMINISTERED BY (If other than Item 6) | CODE | ICE/DCR |
|---|---|---|---|---|---|
| DETENTION COMPLIANCE AND REMOVALS<br>U.S. Immigration and Customs Enforcement<br>Office of Acquisition Management<br>801 I ST NW, RM 900<br>WASHINGTON DC 20536 | | | ICE/Detention Compliance & Removals<br>Immigration and Customs Enforcement<br>Office of Acquisition Management<br>801 I Street NW, suite 930<br>Washington DC 20536 | | |

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | | (x) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|---|
| BRISTOL COUNTY SHERIFFS OFFICE<br>400 FAUNCE CORNER RD<br>NORTH DARTHMOUTH MA 02747-1275 | | | |
| | | | 9B. DATED (SEE ITEM 11) |
| | | X | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>DROIGSA-07-0032/ |
| CODE   0460001421000 | FACILITY CODE | | 10B. DATED (SEE ITEM 13)<br>09/27/2007 |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods. (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted ; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) |
|---|
| See Schedule |

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| CHECK ONE | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER (Specify type of modification and authority)<br>Administrative Modification |

E. IMPORTANT:   Contractor ☐ is not  ☒ is required to sign this document and return _____ 1 _____ copies to the issuing

**14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)**

DUNS Number:  556747269

CONTACT INFORMATION:

Contracting Officer's Representative: Donald Granahan, ▓▓▓▓▓▓▓▓▓▓

Contracting Officer: Monali Parikh, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Contract Specialist: John Cappello, ▓▓▓▓▓▓▓▓▓▓▓▓

The purpose of this modification is incorporate PBNDS 2011 with 2016 revisions.

All other terms and conditions of the agreement remains the same.

Except as provided herein, all terms and conditions of the document referenced in Item 9 A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| LAWRENCE W OLIVEIRA CPO | | MONALI PARIKH<br>TEL: 202-923-0076     EMAIL: Monali.Parikh@ice.dhs.gov | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | 7/11/21 | MONALI S PARIKH  Digitally signed by MONALI S PARIKH<br>Date: 2021.07.08 13:11:53 -04'00'<br>(Signature of Contracting Officer) | |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

PAGE IS LEFT INTENTIONALLY BLANK

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES |
|---|---|---|---|---|
| | | | | 1 / 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| P00007 | See Block 16C | | |

| 6. ISSUED BY                    CODE   70CDCR | 7. ADMINISTERED BY (If other than Item 6)    CODE   TCE/DCR |
|---|---|
| DETENTION COMPLIANCE AND REMOVALS<br>U.S. Immigration and Customs Enforcement<br>Office of Acquisition Management<br>801 I ST NW, RM 900<br>WASHINGTON DC 20536 | TCE/Detention Compliance & Removals<br>Immigration and Customs Enforcement<br>Office of Acquisition Management<br>801 I Street NW, suite 930<br>Washington DC 20536 |

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | (x) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|
| DARTMOUTH TOWN OF<br>400 FAUNCE CORNER ROAD<br>NORTH DARTMOUTH MA 027471275 | | 9B. DATED (SEE ITEM 11) |
| | X | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>DROIGSA-07-0032 |
| CODE   5567472690000     FACILITY CODE | | 10B. DATED (SEE ITEM 13)<br>09/27/2007 |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

**12. ACCOUNTING AND APPROPRIATION DATA (If required)**
See Schedule

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| CHECK ONE | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER (Specify type of modification and authority) |
| X | Administrative Modification |

E. IMPORTANT:    Contractor ☐ is not   ☒ is required to sign this document and return   1   copies to the issuing office.

**14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)**
DUNS Number:  556747269
CONTACT INFORMATION:
Contracting Officer's Representative: Donald Granahan, ███████████
Contracting Officer: Monali Parikh, ████████████████
Contract Specialist: John Cappello, █████████████████

The purpose of this modification is void P00006 to this contract which incorporated the PBNDS 2011 with 2016 Revisions. The vendor terminated the IGSA on 5/20/21 and, as a result, P00006 is no longer applicable.
All other terms and conditions of the agreement
Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| LAWRENCE W. OLIVEIRA | MONALI PARIKH<br>TEL: 202-925-6076     EMAIL: Monali.Parikh@ice.dhs.gov |
| 15B. CONTRACTOR/OFFEROR<br>(Signature of person authorized to sign) | 16B. UNITED STATES OF AMERICA<br>MONALI S PARIKH   Digitally signed by MONALI S PARIKH<br>(Signature of Contracting Officer)   Date: 2021.07.08 13:14:00 -04'00' |
| 15C. DATE SIGNED   7/1/21 | 16C. DATE SIGNED |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DROEGSA-07-0032//P00007 | | | | PAGE<br>2 | OF<br>2 |

NAME OF OFFEROR OR CONTRACTOR
DARTMOUTH TOWN OF

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | remains the same. | | | | |

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110