UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO PILLCO MOROCHO et al. ) | |
| ) | |
| v. ) | Case No. 1:22-10652-WGY |
| ) | |
| BRISTOL COUNTY SHERIFF'S ) | |
| OFFICE et al. ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## ARGUMENT

Federal Defendants[1] move this Court under Federal Rule of Civil Procedure 12(b)(1) to dismiss the claims against them under the Rehabilitation Act and the Federal Tort Claims Act (FTCA). (ECF 29). That motion to dismiss should be denied.

Defendants bring two types of 12(b)(1) challenge in their motion: a sufficiency challenge (a facial legal challenge) to Plaintiffs' claims under the Rehabilitation Act, and an adequacy challenge (a factual dispute) to Plaintiffs' claims under the FTCA. *See* ECF 30 at 7, 9 (Federal Defendants' Memorandum in Support of their Motion to Dismiss); *see also Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) (detailing the difference between sufficiency and adequacy motions to dismiss under 12(b)(1) and noting that a court must credit plaintiffs' well-pleaded allegations in evaluating sufficiency theories); *E.D. v. United States*, 764 F. App'x 169, 172–73 (3d Cir. 2019)("[W]here jurisdiction is intertwined with the merits of an FTCA claim, ... a district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion.").

---

[1] The complaint at issue pursues claims against both state and federal defendants. This Court has already ruled on the motion to dismiss brought by Bristol County Sheriff's Office and various individual defendants. This memorandum concerns solely the Motion to Dismiss (ECF 29) brought by Federal Defendants and has no bearing on claims already proceeding against the state defendants.

## I. The Federal Government has waived sovereign immunity for the claims brought here under the Rehabilitation Act.

The Rehabilitation Act protects qualified individuals with disabilities from being "denied the benefits of, or be subjected to, discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. The Rehabilitation Act permits aggrieved individuals to pursue damages against recipients *and federal providers of federal assistance*. *See* 29 U.S.C. § 794a(a)(2) (providing aggrieved persons with the remedies set forth in Title VI of the Civil Rights Act, including damages); *Colin K. by John K. v. Schmidt*, 715 F.2d 1, 10 (1st Cir. 1983) (affirming that the Rehabilitation Act provides a private cause of action against federal providers of federal assistance). Plaintiffs have named Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") as Defendants in their capacity as providers of funding to Bristol County Sheriff's Office ("BSCO") pursuant to this program. *See* Compl. at ¶¶ 23-24; ("ICE contracted with the Bristol County Sheriff's Office (BCSO) to, among other things, detain immigrants in Bristol County House of Corrections (BCHOC)"); and ¶ 546 ("BCSO and BCHOC receive federal funds, in particular, for their detention of civil immigration detainees.") Defendants' arguments to the contrary are at odds with these allegations in the complaint.

Federal Defendants' status as a provider of federal assistance is only bolstered by their Intergovernmental Service Agreement ("IGSA"). DHS and Bristol County had a contractual relationship by virtue of the IGSA, pursuant to which DHS provided compensation to BCSO to provide for the detention of federal detainees. *See* ECF 30-1. According to this contract, DHS provided federal funding to Bristol County in return for Bristol County detaining individuals in its carceral facilities. The Rehabilitation Act expressly provides for a waiver of sovereign immunity based on alleged "violations [of the Rehabilitation Act] committed by federal funding agencies acting as such—that is, by 'Federal provider[s].'" *Lane v. Pena*, 518 U.S. 187, 193 (1996) (quoting 29 U.S.C. § 794a(a)(2)) (emphasis added). Here, where DHS is acting as a federal provider, Federal Defendants are not entitled to sovereign immunity with respect to Plaintiffs' claims under the Rehabilitation Act. *See Williams v. New York City Housing Authority*, 2009 WL 804137, at *4 (S.D.N.Y., 2009) *aff'd*, 408 F. App'x 389 (2d Cir. 2010) (holding that the Department of Housing and Urban Development ("HUD") was not entitled to sovereign immunity under the Rehabilitation Act when plaintiff, alleging hazardous conditions in her public housing, named HUD as a defendant in its capacity as a provider of funding to the state housing agency in the Section 8 program); *Farmer v. Fed. Bureau of Prisons*, No. 13-CV-1255, 2015 WL 1439871, at *6 n.1 (E.D.N.Y. Mar. 27, 2015) (noting that the Rehabilitation Act provides a waiver of sovereign immunity in

limited circumstances for claims related to "funding activities of federal providers.").

Defendants argue that they are entitled to sovereign immunity pursuant to *Lane*, but Defendants inappropriately situate Plaintiffs' claims outside those allowed by *Lane*. In *Lane*, the plaintiff made the fundamental error of suing a federal agency for disability discrimination when the federal agency provided funding to another federal entity. *Lane*, 518 U.S. at 195. The plaintiff, a student who was expelled from the Merchant Marine Academy because of his disability, alleged that the Department of Transportation was a federal provider liable pursuant to the Rehabilitation Act because it had provided federal money to the Merchant Marine Academy. *Id*. But because the Merchant Marine Academy was itself a federal entity managed by the federal government, the Department of Transportation could not be conceived of as providing the Academy with federal assistance. *Id*. Where entities are "wholly owned by, and operated by or for, the United States," they "cannot fairly be described as receiving Federal 'assistance.'" *U.S. Dept. of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 612 (1986); *see also Lane v. Pena*, 518 U.S. 187, 195 (1996) (holding that sovereign immunity is not waived where federal funds "are actually provided to an entity that the Federal Government manages itself.").

Such is not the case here. BCSO is a separate entity, receiving funding from Federal Defendants. Although Federal Defendants then go on to direct aspects of

BCSO's detention practices, *See* Section II, *infra*, that does not void the fact DHS or ICE is a provider of federal assistance. In short, because DHS provides funding to BCSO it is a federal provider under the terms of the Rehabilitation Act and has waived sovereign immunity for the claims at issue here.

II. **The independent contractor exception does not shield federal defendants from liability in this case.**

Federal defendants move this Court to dismiss the claims against them under the Federal Torts Claims Act (FTCA) by asserting that they are covered by the independent contractor exception to FTCA liability. (ECF 30 at 9). In support of their claim, Federal Defendants assert that, as a factual matter, they did not assert the requisite control over Bristol County Sheriff's Office for liability to attach.

First, this is the inappropriate stage for resolution of that question. Whether ICE or DHS had requisite control over BCSO is a fact-bound inquiry best resolved after discovery. Federal defendants attach their then-operative contract with BCSO as evidence in support of their position, (ECF 30-1), but the contract is not dispositive, and additional discovery is necessary to determine whether Plaintiffs are correct that the Federal Defendants exercised the requisite control for liability to attach. At this stage, the complaint as pleaded should allow this matter to proceed to discovery.

Second, even if this were the appropriate stage to resolve this matter, the IGSA makes clear that the federal defendants bear enough responsibility for the actions of

the state defendants that the exception for federal contractors does not attach. Third, even if BCSO is an independent contractor that, at the very least, does not shield Federal Defendants from liability for torts pleaded that allege specific negligence on the part of Federal Defendants themselves.

> *a. Bristol County Sheriff's Office is not sufficiently independent to be an independent contractor under the terms of the FTCA exception.*

The FTCA establishes liability for the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment…." *Acosta v. U.S. Marshals Serv.*, 445 F.3d 509, 513 (1st Cir. 2006) (quoting 28 U.S.C. § 1346(b)). "'Employee' includes 'officers or employees of any federal agency' and 'persons acting on behalf of a federal agency in an official capacity.'" *Id.* (citing 28 U.S.C. § 2671). In order to determine whether BCSO falls into the independent contractor exception, this Court must look to whether the Federal Government has "the power…to control the detailed physical performance of the contractor." *United States v. Orleans*, 425 U.S. 807, 814 (1976)(internal citation omitted). Here there is such power.

On the face of the IGSA itself there are ample indications that the BCSO employees were "acting on behalf of a federal agency" and that ICE exercised the requisite control over key operations, particularly as the claims here are concerned. The following contract provisions are illustrative:

- Article II, Part B: Limitations on BSCO's ability to subcontract. (ECF 30-1 at 3).[2]

- Article III, Parts A and C: Limitations on BCSO's ability to release or discharge detainees. (ECF 30-1 at 4-5). This is particularly relevant to this matter where the claims, in part, result from the population density at the facility which the Federal Defendants had the authority to reduce. *See e.g.* Compl. At ¶ 602.

- Article V: This article directs that BSCO must perform all detention services according to ICE detention standards and that BSCO will be subject to inspection at any time to ensure that it and its employees are adhering to those standards. (ECF 30-1 at 5).

- Article VI, Part G: This section directs that BCSO requires pre-approval from DHS for non-emergency offsite medical care and treatment of detainees.

- Article VIII, Part A-C: Restricting BCSO from employing or assigning certain individuals to engage in immigration detention. (ECF 30-1 at 7-9).

- Article XV, Part A: Indemnifying BCSO from certain claims including: "any and all liability claims and costs of whatever kind and nature, for injury to or death of any person(s) or loss or damage to any property, which occurs in

---

[2] For the sake of consistency Plaintiffs will refer to the exhibit page numbers as recorded by the ECF system rather that the page numbers on the document itself.

connection with or is incident to performance of work under the terms of this Agreement, and which results from negligent acts or omissions of ICE officers or employees, to the extent that ICE would be liable for such negligent acts or omissions under the Federal Tort Claims Act, 28 USC 2691 *et seq*." (ECF 30-1 at 11).

These contract provisions indicate a level of control that goes beyond that of an independent contractor. These provisions also undermine the Federal Defendants' reliance on *Logue*. Certainly, there are some similarities to *Logue*. In *Logue* there was a contract to allow a county jail to hold federal prisoners, and that contract included a right to inspection and compliance with Federal Bureau of Prison standards. *Logue v. United States*, 412 U.S. 521, 529 (1973). But there are significant differences that take this case outside the *Logue* framework. First, the contract here establishes more control by the federal government. The contract dictates, in part, who BCSO can hire/assign, the need for approval for non-emergency offsite medical care,[3] particular standards by which BCSO's work must be conducted, whether BCSO can release detainees, and when the Federal government will indemnify BCSO. Beyond what is stated in the contract, it is also

---

[3] Federal Defendants argue that BCSO is responsible for the medical treatment of detainees, but this cannot be entirely true where, as here, Federal Defendants can approve or disapprove outside medical treatment.

important to look at what is not stated. Not stated in the contract is the unambiguous language that the First Circuit relied on in *Carroll v. United States*, 661 F.3d 87, 96 (1st Cir. 2011). There, the contract stated that the contractor was "not an employee or agent of the government." Such a term (which presumably the government knows how to include) is not present in the relevant IGSA at issue here. *See* ECF 30-1.

Second, there are significant differences unique to federal immigration detention at play in this case. BCSO was engaged in federal immigration functions, a unique area of the law with no equivalent in state government and where the federal government retains broad authority. *See, e.g. Arizona v. United States,* 567 U.S. 387, 395 (2012). This was not at issue in *Logue*. Additionally, BCSO had entered into a "287(g) agreement" here. While the Federal Defendants assert that the 287(g) agreement is not at issue, (ECF 30 at 14), it is relevant for the role that BCSO played as an agency conducting federal immigration functions. Agreements under Section 287(g) of the INA purport to authorize state officials to engage in federal immigration functions related "to the investigation, apprehension, or detention of aliens in the United States…" 8 U.S.C. § 1357(g)(1). Such functions entail the precise activities that the BCSO and its employees engaged in as described in the complaint and the IGSA. When determining who should bear liability for torts committed in the performance of these functions 8 U.S.C. §

1357(g)(8) is clear: "an officer or employee of a State or political subdivision of a State acting under color of authority under this subsection, or any agreement entered into under this subsection, shall be considered to be acting under color of Federal authority for purposes of determining the liability, and immunity from suit, of the officer or employee in a civil action brought under Federal or State law." 8 U.S.C. § 1357(g)(8). It follows that, to the extent that BCSO employees were engaged in federal functions authorized by 287(g), that they are federal officials for purposes of liability and that such liability would extend to the FTCA.

> b. *Even if Bristol County Sheriff's Office were an independent contractor, the Federal Defendants are still responsible for their own negligence.*

Federal Defendants rest their Motion on claims that BCSO is responsible for the alleged negligence and is an independent contractor, not a part of the federal government. Even if that were true, that does not shield the Federal Defendants from claims that they themselves were negligent. Counts 18 and 21 of the Complaint concern negligence attributable both to BCSO acting on behalf of Federal Defendants and on behalf of the Federal Defendants themselves. Plaintiffs allege that the Federal Defendants were aware of the conditions at Bristol County House of Corrections and of the risk of a COVID-19 outbreak. *See* Compl. at ¶104. Plaintiffs then allege that Federal Defendants themselves took steps to investigate conditions, order additional safety protocols, or, most importantly, facilitate social

distancing and safety of detainees by allowing for their release to home confinement. *See* Compl. ¶¶117-123. These were the actions of the Federal Defendants, either alone or in conjunction with the State Defendants. These actions are therefore not subject to the independent contractor exception to the FTCA because they are claims directly about the action of the federal agencies. *See e.g. Edison v. United States*, 822 F.3d 510, 517–19 (9th Cir. 2016) ("The independent contractor exception, however, has no bearing on the United States' FTCA liability for its own acts or omissions.") *see also Greenland v. United States,* 661 F. App'x 210, 214–15 (3d Cir. 2016) (reversing summary judgment originally based on an independent contractor exception defense because the lower court did not consider the allegations that the Federal Defendant itself responded to some communication with plaintiffs about medical requests to the facility and that they had the authority to approve surgeries, meaning the plaintiff had allegations related to Federal Defendants' own actions of negligent medical care).

|  |  |
|---|---|
| March 20, 2023, | Respectfully submitted, |
|  | Plaintiffs, |
|  | By their attorneys, |
|  | /s/  Oren Nimni_____ |
|  | Oren Nimni, Esq. BBO #691821 |
|  | Amaris Montes *admitted pro hac vice* |
|  | 416 Florida Avenue NW, #26152 |
|  | Washington, DC 20001 |
|  | (202) 540-0029 |
|  | oren@rightsbehindbars.org |

## CERTIFICATE OF SERVICE

The undersigned certifies that this document, filed through the CM/ECF system, will be electronically served on all counsel who are registered users of ECF on March 20, 2023.

/s/ Oren Nimni

Oren Nimni
