UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO PILLCO MOROCHO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BRISTOL COUNTY SHERIFF'S OFFICE, *et al.*,<br><br>Defendants. | Leave to file granted on April 6, 2023<br><br><br>No. 1:22-cv-10652-WGY |

**REPLY IN SUPPORT OF**
**FEDERAL DEFENDANTS' MOTION TO DISMISS**

Plaintiffs' opposition to the Federal Defendants' motion to dismiss only confirms that the Court should dismiss all claims against the Federal Defendants. *See generally* Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss (March 20, 2023), ECF No. 38 ("Opp."). Although the Federal Defendants take seriously Plaintiffs' allegations, sovereign immunity and insufficient pleading preclude any federal liability here. For one, Plaintiffs have not pleaded that the U.S. Department of Homeland Security ("DHS")—the only federal agency served in this case—provided federal funding to the Bristol County Sheriffs' Office ("BCSO"), as required to avoid sovereign immunity under the Rehabilitation Act. Likewise, Plaintiffs fail to identify any facts indicating that their claims under the Federal Tort Claims Act ("FTCA") survive the independent contractor exception. And Plaintiffs cannot salvage their complaint by asserting direct liability against the federal government for its own acts or omissions because they have not plausibly plead as much.

In short, therefore, the Court should grant the Federal Defendants' motion to dismiss and dismiss all claims against them.

**I.     ARGUMENT**

    **A.     Sovereign Immunity Precludes Plaintiffs' Rehabilitation Act Claim Because DHS Is Not a Funding Provider**

Plaintiffs do not dispute that sovereign immunity precludes any claim against DHS for direct liability under the Rehabilitation Act, and Plaintiffs cannot avoid dismissal of their Rehabilitation Act claim by arguing that DHS provided funding to BCSO. Opp. at 3. It is true that sovereign immunity may not preclude suit against a federal agency that provided funding to a non-federal entity, such as BCSO. *See Lane v. Pena*, 518 U.S. 187, 193 (1996). Here, though, the Court has dismissed for lack of service Immigration and Customs Enforcement ("ICE"), which is the only federal agency that could have acted as a funding provider for purposes of Plaintiff's Rehabilitation Act claim. Mem. in Support of Fed. Defendants' Mot. to Dismiss (Feb. 13, 2023), ECF No. 30 at 5 ("Mem."). Plaintiffs failed to serve ICE even after the Court gave them an additional 30 days to do so. *Id.* Instead, DHS is the only remaining federal agency defendant, and DHS is not a funding provider for purposes of their Rehabilitation Act claim. *See* Opp. at 5.

It was ICE—not DHS—that entered into an Intergovernmental Service Agreement ("IGSA") with BCSO. Mem. at 12. Thus, Plaintiffs' opposition cannot point to any allegation in the complaint that DHS—as opposed to ICE—provided funding to BCSO or the Bristol County House of Correction ("BCHOC"). To the contrary, the paragraphs of the complaint cited in Plaintiffs' opposition allege that

now-dismissed ICE—not DHS—funded BCSO and BCHOC.  Compl. & Demand for Jury Trial (Apr. 29, 2022), ECF No. 1, ¶ 23 ("Compl.") ("ICE contracted with [BCSO] to, among other things, detain immigrants in [BCHOC]."); *id.* ¶ 24 (alleging that BCSO entered an IGSA with ICE under which ICE paid BCSO a "fixed per-detainee reimbursement rate").  After declining to serve ICE, Plaintiffs cannot now reap the benefit of having ICE in the case as a funding provider.

If anything, DHS provided funding to ICE, an agency under its umbrella, which then provided funding to BCSO and BCHOC.[1]  But that would be insufficient to label DHS a funding agency by Plaintiffs' own terms.  In opposition to the motion to dismiss, Plaintiffs argue that in the Supreme Court case on point "the plaintiff made the fundamental error of suing a federal agency for disability discrimination when the federal agency provided funding to another federal entity."  Opp. at 5 (citing *Lane*, 518 U.S. at 195).  At best, Plaintiffs' Rehabilitation Act claim against DHS suffers from the same defect.  Thus, Plaintiffs all but admit that DHS is not liable as a funding provider under the Rehabilitation Act.

In any event, Plaintiffs who claim to be persons aggrieved within the meaning of Section 505 of the Rehabilitation Act (29 U.S.C. § 794a), cannot sue the purported funding agency (DHS) for money damages.  Even if sovereign immunity may be waived, *Lane*, 518 U.S. at 193, no cause of action exists against DHS because the Rehabilitation Act does not create one.  Instead, under Section 505(a)(2), the *only* remedies available for a Section 504 violation are the remedies

---

[1] To be clear, the complaint does not actually allege that DHS provided funding to ICE that went to BCSO or BCHOC.

3

available for a title VI violation. 29 U.S.C. § 794a(a)(2). Title VI, in turn, empowers a victim of discrimination to sue the federal funding recipient (in this case, BCSO), but *not* the federal agency funding the recipient. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 715 & n.51 (1979) (suggesting a cause of action under Title VI against discriminatory recipients of federal funding, but not against federal funding agencies); *accord Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191 (4th Cir. 1999) (holding that Title VI "includes no express cause of action, and we decline to imply one against the federal government"); *NAACP v. Med. Ctr., Inc.*, 599 F.2d 1247, 1254 n.27 (3d Cir. 1979) (declaring that "a beneficiary may sue a recipient of federal funding under" Title VI, but "may not sue the administrative agency").[2]

Summarizing the effect of the Supreme Court's decision in *Cannon* and subsequent lower-court decisions, the D.C. Circuit Court of Appeals held that Title VI and Section 504 cannot be enforced against federal funding agencies either through implied rights of action or the Administrative Procedure Act. *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 748-51 (D.C. Cir. 1990) (Ginsburg, J.) ("The *Cannon* opinion contrasts two private remedies: suit against a discriminatory fund recipient to terminate the offending discrimination; and suit

---

[2] *But see Cousins v. Sec'y of U.S. Dep't of Transp.*, 857 F.2d 37, 43 (1st Cir. 1988) (noting that "Title VI provides an avenue for challenging agency action only when that agency acts as a *provider* of federal funds," in a case challenging an agency's regulations under the Rehabilitation Act) (emphasis in original), *reconsidered en banc by* 880 F.2d 603, 604-05 (1st Cir. 1989) (asserting that § 794a(a)(2) provides a private right of action against a federal funding provider but failing to consider whether such remedy is available under Title VI).

against the government to terminate federal funding.  The Court found strong support in legislative history for the former, but resistance on the part of lawmakers toward the latter.").

In all, therefore, Plaintiff's Rehabilitation Act claim against the Federal Defendants fails.

### B. BCSO Is an Independent Contractor Because Plaintiffs Fail to Allege that the Federal Government Exercised Day-to-Day Control of BCSO

With regard to Plaintiffs' FTCA claims, nothing in Plaintiffs' opposition changes that BCSO is an independent contractor such that the United States has not waived sovereign immunity as to BCSO's acts or omissions.  Mem. at 10.  Plaintiffs attempt to characterize the IGSA between ICE and BCSO as giving ICE sufficient control of BCSO to render BCSO an employee rather than an independent contractor.  But none of Plaintiffs' cited portions of the IGSA support that ICE "control[ed] the detailed physical performance of" BCSO, as required for BCSO to be an employee.  *See Logue v. United States*, 412 U.S. 52, 528 (1973).

For example, contrary to Plaintiffs' opposition, the IGSA's placement of any "[l]imitations on BCSO's ability to subcontract," Opp. at 8, does not speak to whether the federal government "exercise[d] day-to-day supervision and control" of BCSO, *Carrol v. United States*, 661 F.3d 87, 95 (1st Cir. 2011).  The purported restrictions on BCSO's ability to subcontract merely require BCSO to obtain ICE approval in the event BCSO "intends to house ICE detainees" elsewhere from

5

BCHOC.  Exhibit 1 to Mem., Inter-Governmental Service Agreement (Sept. 27, 2007), ECF No. 30-1, at 3 ("IGSA").

Nor does the IGSA's requirement that BCSO certify its employees' successful completion of "employment screening" indicate that the federal government controlled the day-to-day performance of BCSO.  *See* Opp. at 8 (referring to purported restrictions against BCSO "employing or assigning certain individuals to engage in immigration detention"); *United States v. Orleans*, 425 U.S. 807, 817 (1976) (holding that a local agency was not a federal agency even though it had to "comply with extensive regulations which include employment policies and procedures"); *Brooks v. A. R. & S. Enters., Inc.*, 622 F.2d 8, 12 (1st Cir. 1980) ("[T]he government's authority under the safety program to screen applicants and to discharge guards who threatened military security did not constitute control within the meaning of the FTCA."); *Reyes Colon v. United States*, No. 18-1225, 2019 WL 165578, at *2 (D.P.R. Jan. 10, 2019) ("That the contract required [the contractor] to abide by certain standards in its hiring . . . did not transform it into a federal agency." (collecting cases)).  If anything, the section on employment screening (Article VIII of the IGSA) indicates that BCSO is an independent contractor by providing that BCSO "shall be responsible to the Government for acts and omissions of [its] own employees . . . ."  IGSA, ECF No. 30-1 at 8.

Likewise, the IGSA's requirements that BCSO adhere to applicable ICE standards and allow ICE to conduct site inspections are insufficient to render BCSO a federal employee under the FTCA.  *See* Opp. at 8; Mem. at 15-16.  Nor do the

6

IGSA's "[l]imitations on BCSO's ability to release or discharge detainees" strip BCSO of independent contractor status. Opp. at 8; *see Henry v. United States*, No. 10-cv-4718, 2013 WL 5972671, at *1-2 (E.D.N.Y. Nov. 5, 2013) (concluding that a non-federal detention facility was an independent contractor despite plaintiff's argument that the facility's contract with the federal government precluded it from releasing "detainees without express consent from ICE"). Similarly, any requirement that ICE indemnify BCSO for misconduct of ICE employees, or that ICE retain approval authority concerning "non-emergency offsite medical care and treatment of detainees," does not relate to whether the federal government "exercise[d] *day-to-day* supervision and control" of BCSO. Opp. at 8-9; *Carrol*, 661 F.3d at 95 (emphasis added). To the contrary, the IGSA's separate requirement that BCSO indemnify ICE for loss arising out of BCSO's misconduct points toward BCSO being an independent contractor. IGSA, ECF No. 30-1 at 11; *see Larsen v. Empresas El Yunque, Inc.*, 812 F.2d 14, 16 (1st Cir. 1986) (holding that the independent contractor exception applied where, among other things, the relevant contract required the contractor to indemnify the federal government).

BCSO's contract with ICE under section 287(g) of the Immigration and Nationality Act does not alter the conclusion that BCSO is an independent contractor such that sovereign immunity is not waived as to its torts. The 287(g) Agreement permits certain BCSO personnel to "be nominated, trained, and approved by ICE to perform certain functions of an immigration officer within the BCSO's jail/correctional facilities." Memorandum of Agreement (Feb. 8, 2017),

7

https://www.ice.gov/doclib/287gMOA/Bristol_MOA_01182017.pdf, at 1 ("287(g) Agreement").[3]

Plaintiffs do not argue that the 287(g) Agreement shows the federal government had day-to-day control of BCHOC. Opp. at 10-11. Instead, Plaintiffs appear to argue that the 287(g) Agreement turns BCHOC employees "engaged in federal functions" into federal employees (as opposed to independent contractors) under the FTCA. *Id*. at 11.

But Plaintiffs do not cite the 287(g) Agreement in support of this argument, and the 287(g) Agreement establishes that participating BCSO employees are not considered federal employees as to any of Plaintiffs' FTCA claims. The 287(g) Agreement states that "[p]articipating BCSO personnel will be treated as Federal employees only for purposes of the" FTCA "when performing a function on behalf of ICE as authorized by" the 287(g) Agreement.[4] *See* 287(g) Agreement at 7. The 287(g) Agreement, in turn, does not authorize BCSO personnel to perform any functions relevant to Plaintiffs' four FTCA claims (Counts 18-21). *See* 287(g) Agreement at 2 ("Approved participating BCSO personnel will be authorized to perform only those immigration officer functions that are set forthin [*sic*] the Standard Operating Procedures (SOP) in Appendix D[.]"); *id*. at 17-19 (reflecting Appendix D, which delineates the "only" authorities delegated to participating

---

[3] The term of the 287(g) Agreement ran until June 30, 2020. Addendum to Extend Memorandum of Agreement (May 16, 2019), https://www.ice.gov/doclib/287gMOA/287gBristolMa2017-02-08.pdf.

[4] Notably, such language does not appear in the IGSA, pursuant to which BCSO is an independent contractor under the FTCA.

8

BCSO personnel pursuant to the 287(g) Agreement). In fact, the 287(g) Agreement makes clear that any agreement between ICE and BCSO concerning general detention of immigrants would be the subject of an IGSA. *Id*. at 2. Accordingly, the 287(g) Agreement does not render any BCSO personnel employees of the federal government for purposes of the Plaintiff's FTCA claims.[5]

Thus, the independent contractor exception precludes Counts 18-21, and the Court should dismiss them.

### C. The United States is Not Directly Liable to Plaintiffs Under the FTCA

Finally, Plaintiffs cannot salvage some of the complaint by claiming in their opposition that Count 18 (negligent maintenance) and Count 21 (negligent medical care) "concern negligence . . . on behalf of the Federal Defendants themselves."[6] Opp. at 11. Plaintiffs' complaint does not adequately allege any negligence on behalf of the federal government, and their opposition confirms as much.

Plaintiffs do not allege or argue that the United States negligently delegated the safekeeping and medical care of Plaintiffs to BCSO in the IGSA. Instead, Plaintiffs appear to argue that despite the IGSA, the United States is directly

---

[5] In the interest of full disclosure, ICE and BCSO entered another 287(g) agreement on June 8, 2020, the relevant terms of which are not materially different from those in the 287(g) Agreement discussed above, except that the June 8 agreement does not mention that any agreement between ICE and BCSO concerning general detention of immigrants would be the subject of an IGSA. *See* Memorandum of Agreement (June 8, 2020), https://www.ice.gov/doclib/287gMOA/287gJEM_BristolCoMA_06-08-2020.pdf, at 1, 4, 8-9.

[6] Importantly, Plaintiffs do not allege that the United States is directly liable under the FTCA for its own acts or omissions in connection with the alleged incident on May 1, 2020 (Counts 19 and 20).

9

negligent for its own acts or omissions in maintaining BCHOC and providing medical care to Plaintiffs. Opp. at 11. The crux of Plaintiffs' claim for negligent maintenance is that the federal government failed to maintain BCHOC in a hygenic way during the pandemic, Compl. ¶¶ 574-76, while the thrust of Plaintiffs' claim for negligent medical care is that the federal government failed to provide Plaintiffs appropriate medical care in the face of the COVID-19 pandemic, Compl. ¶¶ 599-601.

While it is true that the independent contractor exception does not protect the federal government from liability for its own acts or omissions, the complaint does not state a claim for direct negligence by the United States because it fails to allege plausibly that the United States was involved in any negligent maintenance of BCHOC or negligent medical care of Plaintiffs.[7] *See* Fed. R. Civ. P. 12(b)(6); *Lanza v. Fin. Indus. Reg. Auth.*, 953 F.3d 159, 163 (1st Cir. 2020) (noting that a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face'" (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc))). Where, as here, "the factual allegations set forth in the complaint 'are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal.'" *Id.* (quoting *Tambone*, 597 F.3d at 442).

---

[7] The Federal Defendants may argue for dismissal under Rule 12(b)(6) for the first time on reply because doing so "respond[s] to an argument an opposing party raise[d] in an opposition." *Smith v. Liberty Mut. Ins. Co.*, No. 1:20-cv-11583-ADB, 2021 WL 1581017, at *3 (D. Mass. Apr. 22, 2021) (quoting *Allied Home Mortg. Cap. Corp. v. Mark*, No. 12-cv-10158, 2014 WL 4964728, at *12 (D. Mass. Sept. 30, 2014)).

According to Plaintiffs' opposition, the United States is directly liable for negligent maintenance and medical care based on the allegations in paragraphs 117-123 of the complaint. Opp. at 11. But these paragraphs merely characterize the Court's Order issuing a preliminary injunction in 2020 in a case challenging immigration detention during the pandemic at BCHOC involving a few of the Plaintiffs here. Compl. ¶¶ 117-23. In particular, these paragraphs allege that the Court noted that ICE had not "voluntarily protect[ed]" detainees at BCHOC and refused to release certain immigration detainees from BCHOC. *Id.* ¶¶ 117, 121-23. According to these paragraphs of the complaint, the Court also noted that "virtually no one was being systematically tested" for COVID-19 at BCHOC. *Id.* ¶ 119. And these paragraphs also allege that the Court ordered testing of "all individuals in immigration detention at BCSO," and ordered that "no new individuals be admitted to immigration detention at the BCSO." *Id.* ¶ 120.

None of these allegations assert with any specificity that the acts or omissions of ICE itself negligently maintained BCHOC or negligently provided medical treatment to Plaintiffs.[8] *See Yaruro v. United States*, No. 7:22-cv-39, 2023 WL 2614593, at *7 (M.D. Ga. Mar. 23, 2023) (allowing a motion to dismiss FTCA claims that were "more accurately attributable to" a federal contractor and were "only linked to the United States through Plaintiff's unsupported and conclusory

---

[8] Plaintiffs' sparse allegations supporting direct liability against the federal government therefore pale in comparison to the allegations in the only case cited in Plaintiffs' opposition that held a party had plausibly alleged direct liability against the United States. *See Edison v. United States*, 822 F.3d 510, 519-23 (9th Cir. 2016).

statements"). Accordingly, the Court should dismiss the complaint against the Federal Defendants insofar as it alleges direct liability in Counts 18 and 21.

## II. CONCLUSION

For the foregoing reasons, and those in the Federal Defendants' opening brief, the Court should dismiss all claims against the Federal Defendants.

Dated: April 21, 2023

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: */s/ Julian N. Canzoneri*
JULIAN N. CANZONERI
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3170
julian.canzoneri@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on April 21, 2023.

*/s/ Julian N. Canzoneri*
Julian N. Canzoneri
Assistant U.S. Attorney