# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO PILLCO-MOROCHO, ABDOULAYE FALL, DARLIN GUILLERMO, JUAN CARLOS ILLICACHI SHIGLA, DIEGO GALINDO, SEGUNDO ARMIJOS, DIEGO ARMANDO GULLÁN TIXI, MIGUEL LUCAS IXCUNA YAX, LLOYD WAFULA, CONROY DESMOND LEWIS, CARLOS MENJIVAR ROJAS, NUELSON GOMES, FLAVIO ANDRADE PRADO JUNIOR, JANITO DE CARVALHO, JOAO FERNANDES, AIRES DA GRACA AND MARCO BATTISTOTTI,<br><br>        Plaintiffs,<br><br>v.<br><br>BRISTOL COUNTY SHERIFF'S OFFICE; SHERIFF THOMAS HODGSON, IN HIS INDIVIDUAL CAPACITY; SUPERINTENDENT STEVEN SOUZA, IN HIS INDIVIDUAL CAPACITY; AND OFFICERS DOE #1-26, IN THEIR INDIVIDUAL CAPACITIES,<br><br>        Defendants. | Civil No.: 1:22-cv-10652-WGY |

**PLAINTIFFS' SECOND SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS TO DEFENDANTS BRISTOL COUNTY SHERIFF'S
OFFICE, SHERIFF THOMAS HODGSON, AND SUPERINTENDENT STEVEN SOUZA**

Pursuant to Federal Rule of Civil Procedure, Plaintiffs hereby request that Defendants

respond to this Request for Production of Documents within 30 days and by producing materials

electronically or in hard copy at the law offices of Todd & Weld, LLP, 1 Federal St, 27th Floor,

Boston, Massachusetts, 02110.

# INTRUCTIONS

1.    You are requested to state separately for each of the following numbered requests for production which documents will be produced for inspection and copying.

2.    To the extent that any documents falling within the requests below have been destroyed, lost or misplaced, please identify those documents by type, author, date, number of pages, and the date and manner in which the document was destroyed, lost or misplaced.

3.    Plaintiffs specifically request that you supplement your responses to these Requests as required under Federal Rule of Civil Procedure 34.

4.    Responsive documents shall be produced as they are kept in the usual course of business or organized and labeled to correspond with numbered Requests.  Responsive documents and materials should be produced as follows:

(a)  All standard, non-color documents shall be scanned to single page Group IV, TIFF format, at least 300 dpi and 8½" x 11" page size, except for documents requiring higher resolution or different page size.  Image and Concordance format database load files will capture the physical document boundaries and smallest binding element as the attachment range.

(b)  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.,* paper documents should be logically unitized).

(c)  Color photographs and documents will be imaged in color and Bates numbered in sequence with contiguous documents.

(d)  Each page of a production will be electronically Bates numbered using a number that corresponds to the TIFF image file name, and the Bates number will be endorsed on the image.

(e)  Document images will be processed through an Optical Character Recognition process (OCR).  An ASCII delimited database load file will be produced with the corresponding image files.  The database load file shall contain the fields identified in Appendix A including beginning and ending bates numbers, number of pages, parent/child attachment ranges of each document, custodian and a source field indicating the identity of any associated box number.  OCR text will be provided in separate .TXT files organized at the document level and named with the corresponding image file name.  The path to the OCR text file will be included in

the load file. The delimited database file will be provided. The database load file will contain header field identifiers that identify the field content and order of the delimited data file.

(f) All ESI will be produced as TIFF images with DISCO format load files, with all comments, tracked changes, edits, notes, hidden content, and similar content intact. In addition to the above, all excel files shall be produced with un-hidden rows, and all presentation files shall be produced with hidden slides, speakers' notes, and similar data. File names and other metadata shall be preserved in database load files. Each page of ESI will be named using a unique item identifier. Container Files (e.g., zipped files, emails with attachments, etc.) will be opened so that each individual file in the container is produced as its own document. Attachments or embedded files will also be extracted and produced outside of the container file. Load files for ESI will be provided. Load files must preserve the original document unitization.

(g) All metadata for ESI will be produced in an ASCII delimited database load file and will include the metadata identified in Appendices B (for non-email ESI) and C (for email ESI). Attachment associations to email and other documents (*e.g.*, embedded files) will be preserved as attachment number range fields. Attachments should be numbered consecutively following the parent file. If the native email application cannot provide attachments as contemplated in this paragraph, email attachments shall be provided in a reasonably usable format.

(h) Responsive spreadsheets or other proprietary files will be provided in their native format. Notwithstanding the above production protocol, Plaintiff remains entitled to request that any other document produced as a TIFF be re-produced as a native file.

5. The document requests below are intended to seek non-privileged documents only. If any objection rests in whole or in part on a claim of privilege, the privilege claimed shall be stated with particularity. With respect to any document responsive to any Request that is withheld from production on the grounds that the document or any of its contents is privileged or otherwise not subject to production, you are requested to provide a privilege log in strict compliance with the requirements of Federal Rule of Civil Procedure 26. Such privilege log should include, for each document withheld,

(a) the author, originator, or addresser;

(b) the addressee(s);

3

       (c)        all recipients of copies;

       (d)        the date the document was prepared and/or transmitted;

       (e)        the nature of the document (i.e. letter, note, report, memoranda, etc.);

       (f)        the present custodian and location of the document; and

       (g)        a statement of the factual and legal reason(s) why the document is being withheld from production.

6.      No document shall be withheld from discovery based on any claim or belief by the Defendants that such document already is in the possession of the Plaintiffs.

7.      Once your document production is completed, general objections to requests for production of documents and things are prohibited.  As to each request, your written response must state either: (i) notwithstanding prior general objections, all responsive documents or things in the possession, custody, or control of the responding party have been produced; (ii) after diligent search no responsive documents or things are in the possession, custody, or control of the responding party; or (iii) the specific objection made to the request.

8.      When a specific objection is made, the response shall describe the nature of all responsive documents or things in the possession, custody, or control of the responding party that have not been produced because of the objection.

9.      If no documents exist that are responsive to a request, please state that no documents exist.

10.     A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

11.     These requests are continuing in nature and require supplemental response and production.

## **DEFINITIONS**

As used herein, the words and phrases set out below shall have the following meanings:

1.      "Communication" means any correspondence, contact, discussion, or any other kind of written or oral exchange or transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a document or documents, whether directly or through "cc" copying.

2.      "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure and shall therefore include, without limitation, any writing, recording, photograph, computer data base, email, or other item containing information of any kind or nature, however produced or reproduced, whether an original or a duplicate, whatever its origin or location, and regardless of the form in which such information exists or is maintained.

3.      "Person" means any natural person or any legal or business entity.

4.      A "representative" of a person means any officer, director, agent, employee, attorney, or other representative of such person.

5.      An "affiliate" of any entity means any person who, directly or indirectly, controls or is controlled by or is under common control with such entity.  The term "control" and its correlatives, as used above, means the possession, whether direct or indirect, or the power to direct or to cause the direction of the management and policies of a person, whether through ownership of an entity interest, by corporate position, by contract, or otherwise.

6.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7.    "Plaintiffs" means the above-captioned Plaintiffs, and any agent, employee, attorney, or other representative of the Plaintiffs.

8.    "You," "Yourself," "Your," or "Defendants" means the Bristol County Sheriff's Office, Sheriff Thomas Hodgson, and/or Superintendent Steven Souza, and/or any of their representatives or affiliates, as defined above.

9.    "Complaint" means the Amended Complaint filed on February 5, 2024 by the Plaintiffs in this action.

10.    "BCHOC" means "Bristol County House of Corrections."

## REQUESTS FOR PRODUCTION

### Request for Production No. 13

All documents, photos, and video footage supporting your assertion that Plaintiffs engaged in property damage to the ICE B Unit housing area in BCHOC on May 1, 2020.

### Request for Production No. 14

All email correspondence from all the custodians listed in Defendants' Initial Disclosures relating to the events detailed in the Complaint (the surrounding conditions and culminating incident on May 1, 2020 at BCHOC) not already produced.

### Request for Production No. 15

All organizational charts of leadership and staffing at Bristol County House of Corrections from 2019 to 2022, if not already produced.

### Request for Production No. 16

Photographs sufficient to identify all individuals, with their names, who were listed in the Defendants' Responses to the Plaintiffs' First Set of Interrogatories.

**Request for Production No. 17**

All records related to all emergency medical technicians (EMTs), ambulance companies, or other medical care providers (excluding those employed by BCSO or BCHOC) who responded to the jail and/or provided medical care to any of the Plaintiffs on May 1, 2020 or for related medical care needs thereafter.

Respectfully submitted for the Plaintiffs,

By their attorneys,

*/s/ Miriam R. Nemeth*
Miriam R. Nemeth, *admitted pro hac vice*
RIGHTS BEHIND BARS
416 Florida Avenue, NW #26152
Washington, D.C. 20001
Tel: (202) 455-4399
miriam@rightsbehindbars.org

Benjamin J. Wish (BBO #672743)
Susmita A. Gadre (BBO #705376)
Madison F. Bader (BBO # 705109)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
Fax: (617) 227-5777
bwish@toddweld.com
sgadre@toddweld.com
mbader@toddweld.com

*Attorneys for the Plaintiffs*

Dated:  August 29, 2024

**Appendix A**

**Image Fields to be Produced
for Hard Copy Reprographics**

| BEGBATES | Bates number on first page of each document |
|---|---|
| ENDBATES | Bates number on final page of each document |
| BEGATTACH | Bates number on first page of document attachment range |
| ENDATTACH | Bates number on last page of document attachment range |
| CUSTODIAN | Name of custodian in possession of the paper file, if no custodian, then department |
| BOXNUMBER | Box data sufficient to efficiently locate the original paper document |
| FULLTEXTPATH | Path to text file on delivery media |

**Appendix B**

**Non E-Mail ESI Metadata**
**Fields to be Produced**

| Fields for ESI docs | Description |
|---|---|
| BEGBATES | Beginning bates number of document |
| ENDBATES | Ending bates number of document |
| BEGATTACH | Beginning bates number of attachment document. |
| ENDATTACH | Ending bates number of last attachment |
| ATTACHMENT COUNT | Number of Total Attachments per Document |
| AUTHOR | Name of person creating document (if available) |
| DATECREATED | Date document was created (mm/dd/yyyy) |
| DATEMODIFIED | Date document was last saved (mm/dd/yyyy) |
| TIMECREATED | Time document was created |
| TIMEMODIFIED | Time document was last saved |
| CUSTODIAN | Name of person or source location from whom the file was obtained |
| DOCLINK | Full relative path to the current location of the native or near-native document used to link to native produced file |
| FILEEXT | Extension of native document |
| FILENAME | Name of the original native file as it existed at the time of collection |
| FOLDERPATH | Location within folder structure, including any container files, for the original native file as it existed at the time of collection |
| DEDUPLICATION | Identifying value (MD5 or SHA-1) of an electronic record, used for deduplication and authentication |
| RCRDTYPE | Indicates document type, i.e., email; attachment; edoc; scanned; etc. |
| DUPCUSTODIAN | Custodian names for duplicate files |
| REDACTION | Whether the document contains any redactions ("Y" or "N") |
| FULLTEXTPATH | The path of the full text files for each document |
| MD5HASH | MD5 Hash Value |

**Appendix C**

**E-Mail Metadata**
**Fields to be Produced**

All fields listed in Appendix "A" plus (may only apply to email attachments):

| Fields for ESI docs | Description |
| --- | --- |
| FROM | Name of person sending an email |
| TO | Names of persons to whom an email is sent |
| BCC | Names of persons blind copied on an email |
| CC | Names of persons copied on an email |
| SUBJECT | Subject line of an email |
| DATERECEIVED | Date email was received (mm/dd/yyyy) |
| DATESENT | Date email was sent |
| TIMERECEIVED | Time email was received in user's mailbox |
| TIMESENT | Time email was sent |
| MESSAGEID | Message ID of an email |
| STOREID | Name of the archive the emails or files were extracted from |
| FOLDERPATH | Email Relative Path (i.e. Inbox and subfolder location of original) |

## <u>CERTIFICATE OF SERVICE</u>

I, Miriam R. Nemeth, hereby certify that on August 29, 2024, I caused the foregoing document to be served by email on all counsel of record as listed below:

William P. Breen, Jr., BBO #558768
Eckert Seamans Cherin & Mellott, LLC
Two International Place, 16" Floor
Boston, MA 02110
(617) 342-6800
wbreen@eckertseamans.com

*/s/ Miriam R. Nemeth*
Miriam R. Nemeth

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARIO PILLCO-MOROCHO, ABDOULAYE FALL, DARLIN GUILLERMO, JUAN CARLOS ILLICACHI SHIGLA, DIEGO GALINDO, SEGUNDO ARMIJOS, DIEGO ARMANDO GULLÁN TIXI, MIGUEL LUCAS IXCUNA YAX, LLOYD WAFULA, CONROY DESMOND LEWIS, CARLOS MENJIVAR ROJAS, NUELSON GOMES, FLAVIO ANDRADE PRADO JUNIOR, JANITO DE CARVALHO, JOAO FERNANDES, AIRES DA GRACA AND MARCO BATTISTOTTI, |  |
| Plaintiffs, | Civil No.: 1:22-cv-10652-WGY |
| v. |  |
| BRISTOL COUNTY SHERIFF'S OFFICE; SHERIFF THOMAS HODGSON, IN HIS INDIVIDUAL CAPACITY; SUPERINTENDENT STEVEN SOUZA, IN HIS INDIVIDUAL CAPACITY; AND OFFICERS DOE #1-26, IN THEIR INDIVIDUAL CAPACITIES, |  |
| Defendants. |  |

## PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS BRISTOL COUNTY SHERIFF'S OFFICE, SHERIFF THOMAS HODGSON, AND SUPERINTENDENT STEVEN SOUZA

Pursuant to Federal Rule of Civil Procedure, Plaintiffs hereby request that Defendants respond to this Request for Production of Documents within 30 days and by producing materials electronically or in hard copy at the law offices of Todd & Weld, LLP, 1 Federal St, 27th Floor, Boston, Massachusetts, 02110.

1

## INSTRUCTIONS

1.      You are requested to state separately for each of the following numbered requests for production which documents will be produced for inspection and copying.

2.      To the extent that any documents falling within the requests below have been destroyed, lost or misplaced, please identify those documents by type, author, date, number of pages, and the date and manner in which the document was destroyed, lost or misplaced.

3.      Plaintiffs specifically request that you supplement your responses to these Requests as required under Federal Rule of Civil Procedure 34.

4.      Responsive documents shall be produced as they are kept in the usual course of business or organized and labeled to correspond with numbered Requests.  Responsive documents and materials should be produced as follows:

(a) All standard, non-color documents shall be scanned to single page Group IV, TIFF format, at least 300 dpi and 8½" x 11" page size, except for documents requiring higher resolution or different page size.  Image and Concordance format database load files will capture the physical document boundaries and smallest binding element as the attachment range.

(b) In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.,* paper documents should be logically unitized).

(c) Color photographs and documents will be imaged in color and Bates numbered in sequence with contiguous documents.

(d) Each page of a production will be electronically Bates numbered using a number that corresponds to the TIFF image file name, and the Bates number will be endorsed on the image.

(e) Document images will be processed through an Optical Character Recognition process (OCR).  An ASCII delimited database load file will be produced with the corresponding image files.  The database load file shall contain the fields identified in Appendix A including beginning and ending bates numbers, number of pages, parent/child attachment ranges of each document, custodian and a source field indicating the identity of any associated box number.  OCR text will be provided in separate .TXT files organized at the document level and named with the corresponding image file name.  The path to the OCR text file will be included in

2

the load file.  The delimited database file will be provided.  The database load file will contain header field identifiers that identify the field content and order of the delimited data file.

(f)  All ESI will be produced as TIFF images with DISCO format load files, with all comments, tracked changes, edits, notes, hidden content, and similar content intact. In addition to the above, all excel files shall be produced with un-hidden rows, and all presentation files shall be produced with hidden slides, speakers' notes, and similar data.  File names and other metadata shall be preserved in database load files.  Each page of ESI will be named using a unique item identifier.  Container Files (e.g., zipped files, emails with attachments, etc.) will be opened so that each individual file in the container is produced as its own document.  Attachments or embedded files will also be extracted and produced outside of the container file. Load files for ESI will be provided.  Load files must preserve the original document unitization.

(g)  All metadata for ESI will be produced in an ASCII delimited database load file and will include the metadata identified in Appendices B (for non-email ESI) and C (for email ESI). Attachment associations to email and other documents (*e.g.*, embedded files) will be preserved as attachment number range fields.  Attachments should be numbered consecutively following the parent file. If the native email application cannot provide attachments as contemplated in this paragraph, email attachments shall be provided in a reasonably usable format.

(h)  Responsive spreadsheets or other proprietary files will be provided in their native format.  Notwithstanding the above production protocol, Plaintiff remains entitled to request that any other document produced as a TIFF be re-produced as a native file.

5.    The document requests below are intended to seek non-privileged documents only.

If any objection rests in whole or in part on a claim of privilege, the privilege claimed shall be stated with particularity.  With respect to any document responsive to any Request that is withheld from production on the grounds that the document or any of its contents is privileged or otherwise not subject to production, you are requested to provide a privilege log in strict compliance with the requirements of Federal Rule of Civil Procedure 26.  Such privilege log should include, for each document withheld,

(a)    the author, originator, or addresser;

(b)    the addressee(s);

3

      (c)     all recipients of copies;

      (d)     the date the document was prepared and/or transmitted;

      (e)     the nature of the document (i.e. letter, note, report, memoranda, etc.);

      (f)     the present custodian and location of the document; and

      (g)     a statement of the factual and legal reason(s) why the document is being withheld from production.

6.     No document shall be withheld from discovery based on any claim or belief by the Defendants that such document already is in the possession of the Plaintiffs.

7.     Once your document production is completed, general objections to requests for production of documents and things are prohibited.  As to each request, your written response must state either: (i) notwithstanding prior general objections, all responsive documents or things in the possession, custody, or control of the responding party have been produced; (ii) after diligent search no responsive documents or things are in the possession, custody, or control of the responding party; or (iii) the specific objection made to the request.

8.     When a specific objection is made, the response shall describe the nature of all responsive documents or things in the possession, custody, or control of the responding party that have not been produced because of the objection.

9.     If no documents exist that are responsive to a request, please state that no documents exist.

10.     A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

11.     These requests are continuing in nature and require supplemental response and production.

**DEFINITIONS**

As used herein, the words and phrases set out below shall have the following meanings:

1.     "Communication" means any correspondence, contact, discussion, or any other kind of written or oral exchange or transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a document or documents, whether directly or through "cc" copying.

2.     "Document" shall have the meaning set forth in Rule 34(a) of the Federal Rules of Civil Procedure and shall therefore include, without limitation, any writing, recording, photograph, computer data base, email, or other item containing information of any kind or nature, however produced or reproduced, whether an original or a duplicate, whatever its origin or location, and regardless of the form in which such information exists or is maintained.

3.     "Person" means any natural person or any legal or business entity.

4.     A "representative" of a person means any officer, director, agent, employee, attorney, or other representative of such person.

5.     An "affiliate" of any entity means any person who, directly or indirectly, controls or is controlled by or is under common control with such entity.  The term "control" and its correlatives, as used above, means the possession, whether direct or indirect, or the power to direct or to cause the direction of the management and policies of a person, whether through ownership of an entity interest, by corporate position, by contract, or otherwise.

6.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7.      "Plaintiffs" means the above-captioned Plaintiffs, and any agent, employee,

5

attorney, or other representative of the Plaintiffs.

8.     "You," "Yourself," "Your," or "Defendants" means the Bristol County Sheriff's Office, Sheriff Thomas Hodgson, and/or Superintendent Steven Souza, and/or any of their representatives or affiliates, as defined above.

9.     "Complaint" means the Amended Complaint filed on February 5, 2024 by the Plaintiffs in this action.

10.     "BCHOC" means "Bristol County House of Corrections."

11.     "General population" means a housing placement that permits for interaction with other detainees in a dorm, cell-block, or shared unit.

12.     "Solitary confinement" includes "segregation," "special housing units," "special management units," "administrative segregation," "medical segregation," or any other housing placement where a detainee is kept in a cell alone and afforded limited out-of-cell time.

13.     "ICE" means Immigration and Customs Enforcement, a sub-agency of the Department of Homeland Security.

## REQUESTS FOR PRODUCTION

### Request for Production No. 18

All disciplinary records concerning any disciplinary processes imposed on Plaintiffs following and related to the incidents of May 1, 2020, including reports, tickets, decisions and the bases/rationale therefore, appeals, evidence relied upon, punishment meted out, video or audio recordings of the hearings, and/or any other documents, photos, or video footage.

### Request for Production No. 19

Complete personnel and disciplinary files for all named defendants, members of the SRT, members of the restraint team, members of the K-9 team, and all other BCSO staff present during

the May 1, 2020 incident, including but not limited to all documents detailing trainings received by each individual and all disciplinary materials (including allegations and conclusions, even if unfounded) against the individual from January 1, 2017 through the closure of the ICE facility at BCHOC.

**Request for Production No. 20**

All records detailing complaints filed with or against the BCHOC involving the ICE detention facility or practices from January 2017 through the closure of the ICE facility at BCHOC.

**Request for Production No. 21**

All records demonstrating ICE's removal of documents and materials concerning the ICE detainees from BCHOC.

**Request for Production No. 22**

All records of internal inspections, audits, or reviews of any facilities in which ICE detainees were housed at BCHOC from January 1, 2017 through the end of the ICE contract.

**Request for Production No. 23**

All records of alleged property damage (by detainees or BCSO staff) and repairs to that property damage (including the costs of those repairs) arising from the May 1, 2020 incident.

**Request for Production No. 24**

All records detailing housing decisions made by BCSO staff for all Plaintiffs during their tenure at the BCHOC, including the decision to place some Plaintiffs in general population at any point and the decision to place some Plaintiffs in solitary confinement following the May 1, 2020 incident or at any other point.

**Request for Production No. 25**

Training records from January 1, 2017 through January 1, 2021 for all medical staff who

responded to the May 1, 2020 incident or who evaluated Plaintiffs in the weeks thereafter, including specifically training on responding to major incidents, the impacts of OC spray and other less-lethal munitions or uses of force, and providing mental health care for conditions such as PTSD.

**Request for Production No. 26**

All product guides, user manuals, and/or all training materials on less lethal weapons, including how to use those weapons, of which materials the weapons are constructed, risk factors for using the weapons, and protocols for accessing and storing them, whether developed by Bristol County, the manufacturer, or a vendor.

**Request for Production No. 27**

All use of force packets, incident reports, armory logs, and other documents describing major disturbances in BCHOC since 2000, including specifically an incident in the Ash Street facility in 1989, an incident in the Ash Street facility in 1993, in the Dartmouth facility on April 15, 2001 and in the main facility in early 2023, as testified to by Superintendent Steven Souza during his deposition on December 20, 2024.

**Request for Production No. 28**

All written policies and training materials concerning the treatment of ICE detainees (as opposed to people incarcerated at BCHOC because they were charged with or convicted of a crime) at BCHOC.

**Request for Production No. 29**

Video recordings of all communications among BCSO staff on or about the occurrences at ICE building on May 1, 2020 including debriefs, including pre-event briefings and post-event debriefings and/or interviews with BCSO staff.

**Request for Production No. 30**

All documents outlining the provision of federal financial assistance to the BCSO and BCHOC, including all federal grants, loans, and subsidies, including but not limited those documents related to BCSO's 287(g) agreement with ICE.

Respectfully submitted for the Plaintiffs,

By their attorneys,

*/s/ Miriam R. Nemeth*
Miriam R. Nemeth, *admitted pro hac vice*
Lillian Novak, *admitted pro hac vice*
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, D.C. 20033
Tel: (202) 455-4399
miriam@rightsbehindbars.org

Benjamin J. Wish (BBO #672743)
Susmita A. Gadre (BBO #705376)
Madison Rosen (BBO # 705109)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
Fax: (617) 227-5777
bwish@toddweld.com
sgadre@toddweld.com
mrosen@toddweld.com

*Attorneys for the Plaintiffs*

Dated:  January 13, 2025

<u>**Appendix A**</u>

**Image Fields to be Produced
for Hard Copy Reprographics**

| BEGBATES | Bates number on first page of each document |
|---|---|
| ENDBATES | Bates number on final page of each document |
| BEGATTACH | Bates number on first page of document attachment range |
| ENDATTACH | Bates number on last page of document attachment range |
| CUSTODIAN | Name of custodian in possession of the paper file, if no custodian, then department |
| BOXNUMBER | Box data sufficient to efficiently locate the original paper document |
| FULLTEXTPATH | Path to text file on delivery media |

**Appendix B**

**Non E-Mail ESI Metadata
Fields to be Produced**

| Fields for ESI docs | Description |
| --- | --- |
| BEGBATES | Beginning bates number of document |
| ENDBATES | Ending bates number of document |
| BEGATTACH | Beginning bates number of attachment document. |
| ENDATTACH | Ending bates number of last attachment |
| ATTACHMENT COUNT | Number of Total Attachments per Document |
| AUTHOR | Name of person creating document (if available) |
| DATECREATED | Date document was created (mm/dd/yyyy) |
| DATEMODIFIED | Date document was last saved (mm/dd/yyyy) |
| TIMECREATED | Time document was created |
| TIMEMODIFIED | Time document was last saved |
| CUSTODIAN | Name of person or source location from whom the file was obtained |
| DOCLINK | Full relative path to the current location of the native or near-native document used to link to native produced file |
| FILEEXT | Extension of native document |
| FILENAME | Name of the original native file as it existed at the time of collection |
| FOLDERPATH | Location within folder structure, including any container files, for the original native file as it existed at the time of collection |
| DEDUPLICATION | Identifying value (MD5 or SHA-1) of an electronic record, used for deduplication and authentication |
| RCRDTYPE | Indicates document type, i.e., email; attachment; edoc; scanned; etc. |
| DUPCUSTODIAN | Custodian names for duplicate files |
| REDACTION | Whether the document contains any redactions ("Y" or "N") |
| FULLTEXTPATH | The path of the full text files for each document |
| MD5HASH | MD5 Hash Value |

**Appendix C**

**E-Mail Metadata**
**Fields to be Produced**

All fields listed in Appendix "A" plus (may only apply to email attachments):

| Fields for ESI docs | Description |
|---|---|
| FROM | Name of person sending an email |
| TO | Names of persons to whom an email is sent |
| BCC | Names of persons blind copied on an email |
| CC | Names of persons copied on an email |
| SUBJECT | Subject line of an email |
| DATERECEIVED | Date email was received (mm/dd/yyyy) |
| DATESENT | Date email was sent |
| TIMERECEIVED | Time email was received in user's mailbox |
| TIMESENT | Time email was sent |
| MESSAGEID | Message ID of an email |
| STOREID | Name of the archive the emails or files were extracted from |
| FOLDERPATH | Email Relative Path (i.e. Inbox and subfolder location of original) |

## <u>CERTIFICATE OF SERVICE</u>

I, Miriam R. Nemeth, hereby certify that on January 13, 2025, I caused the foregoing document to be served by email on all counsel of record as listed below:

William P. Breen, Jr., BBO #558768
Eckert Seamans Cherin & Mellott, LLC
Two International Place, 16" Floor
Boston, MA 02110
(617) 342-6800
wbreen@eckertseamans.com

*/s/ Miriam R. Nemeth*
Miriam R. Nemeth

13