IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO PILLCO MOROCHO, et al.<br><br>              *Plaintiffs*,<br><br>v.<br><br>BRISTOL COUNTY SHERIFF'S OFFICE, et al.<br><br>              *Defendants*. | Case No.: 1:22-cv-10652-MPK |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' REQUEST FOR MORE DEFINITE STATEMENT**

      Defendants' delinquent motion, ECF 172, is long on rhetoric and short on substance. After habitually failing to meet litigation deadlines, and after the close of discovery, Defendants complain that they cannot reasonably answer Plaintiffs' well-pleaded Second Amended Complaint (SAC). They also assert that allegations in the SAC—including those discussing national condemnation of their own calculated and disproportionate use of excessive force against detained immigrants on May 1, 2020—should be stricken as "scandalous." Defendant's motion is the latest in a pattern of cavalier disregard for the Federal Rules of Civil Procedure and the Local Rules of this Court. This Court should not reward Defendants' continued attempts to commandeer the litigation schedule and should deny Defendants' motion as untimely.

      Defendants' motion also fails on the merits. *First*, the factual bases of Plaintiffs' claims are crystal clear. Defendants make no arguments regarding why Plaintiffs' allegations are so vague or unintelligible as to prevent Defendants from being able to respond to them. Rather, Defendants argue that Plaintiffs do not provide sufficient factual allegations to support their causes of action,

1

which is outside of Rule 12(e)'s scope. *Second*, the allegations which Defendants seek to strike are only "scandalous" because they concern Defendants' disgraceful and shocking conduct on May 1, 2020. The allegations are not "scandalous" under the meaning of Rule 12(f) in that they are prejudicial to the Defendants. Because Defendants' arguments are without any discernible support in the facts or the law, their motion should be denied.

## I.       RELEVANT BACKGROUND

This action arises from a series of institutional failures by the Bristol County Sheriff's Office ("BCSO") on May 1, 2020. Those decisions culminated in a calculated and disproportionate use of excessive force—including the deployment of weapons systems like a flash bang grenade, chemical agents, pepper-ball launchers, anti-riot shields, and canines—against 25 immigrants detained in Unit B of the C. Carlos Carreiro Immigration Detention Center ("Detention Center") at the Bristol County Jail and House of Correction ("BCHOC") in North Dartmouth, Massachusetts. Plaintiffs seek compensatory and punitive damages for the serious physical and psychological harm they endured because of BCSO's actions.

With leave of Court, Plaintiffs filed their Second Amended Complaint (the "SAC") on May 9, 2025. ECF 159. As this Court observed, the SAC eliminates Doe defendants and specifically names current or former BCSO employees. ECF 158 at 3. It also "pleads in greater detail the factual basis for the legal claims" and adds new legal claims related to the old ones. *Id.* at 4.

All Defendants are represented by the same counsel, William Breen. Defendants BCSO, Sheriff Hodgson, and Superintendent Souza were served with the SAC on May 9, 2025, via electronic notice to Mr. Breen. *See* Fed. R. Civ. P. 5. The new Defendants were properly served on Friday, May 16, 2025, via email to Mr. Breen and to BCSO's representative, Edward Meyers. *See* ECF 161 (Affidavit of Service).

2

By operation of Rule 12(a)(1)(A)(i) and Local Rule 5.4, Defendants' responsive pleadings were due at 6:00 p.m. on June 6, 2025. *See* ECF 161 (docket entry setting the briefing deadline). Save a few remaining depositions, discovery also closed that day.[1] Defendants never sought, let alone received, an extension.[2]

When Defendants failed to file anything that day, Plaintiffs requested entry of default pursuant to Rule 55(a). *See* ECF 170, 171. Hours later, Defendants filed an "Objection" to entry of default, ECF 173, as well as the instant "Request for More Definite Statement Concerning Plaintiffs' Second Amended Complaint Pursuant to Rule 12(E) and Rule 12(F)." ECF 172.

## II.     ARGUMENT

### A. Defendants' Continued Abuse of the Litigation Process is Inexcusable, and Their Motion Should Be Denied as Untimely

A briefing deadline "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985). To state the obvious, ignoring deadlines will "undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992); *see also Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45 (1st Cir. 2002) (upholding dismissal with prejudice for failure to comply with court orders and want of prosecution where plaintiff, "on two occasions now, simply ignored court-ordered deadlines because of difficulties in providing basic discovery") (internal quotations omitted); *Tessera, Inc. v. Sony Corp.*, 2013 WL 97794, at

---

[1] The Court has granted Defendant a 45-day extension after mediation to depose any non-settling Plaintiffs, and Defendants have also agreed to set the depositions of Defendants Rodi and Assad during that time. *See* ECF 172 at 6 n. 3. There has been no enlargement of any other discovery deadline.

[2] *See* L.R. 16.1 ("The scheduling order shall specify that its provisions, including any deadlines, having been established with the participation of all parties, can be modified only by order of the judicial officer, and only upon a showing of good cause supported by affidavits, other evidentiary materials, or references to pertinent portions of the record.").

\*3 (N.D. Cal. Jan. 7, 2013) ("A scheduling order is not a mere suggestion or a trifle that can be disregarded when it becomes inconvenient; it is an order from the court. Just like any other order, the court expects compliance.").

Defendants provide no explanation—let alone one approaching good cause—for neglecting the briefing deadlines established by the Federal Rules of Civil Procedure and the Local Rules.[3] Worse yet, this is part of a pattern of prejudicial delay. *See, e.g.* ECF 158 at 2 (observing that Defendants' opposition to the SAC "was filed over three weeks late"); *id.* at 3 (discussing Defendants' "significant delays" in producing discovery); ECF 137-1 at 8–9 (detailing Defendants' 14-month delay in producing written discovery); ECFs 46, 69, 80, 91 (Plaintiffs' motions to compel).

Defendants' serial malfeasance continues to prejudice Plaintiffs, who have consistently met all applicable deadlines and have not sought or received any leniency from this Court. As one example, Defendants' motion has prejudiced Plaintiffs' ability to meaningfully and accurately evaluate their case in advance of mediation, which will proceed on Wednesday, July 2, 2025. Plaintiffs are now forced to navigate mediation without the benefit of a clear record, full disclosure, or resolution of critical issues that Defendants have obstructed or delayed.

In short, Defendants are not entitled to special treatment. Their actions must have consequences. Here, the Court should deny their motion as untimely.

---

[3] *See* L.R. 5.4 ("All electronic transmissions of documents must be completed prior to 6:00 p.m. to be considered timely filed that day."); L.R. 16.1 ("The scheduling order shall specify that its provisions, including any deadlines, having been established with the participation of all parties, can be modified only by order of the judicial officer, and only upon a showing of good cause supported by affidavits, other evidentiary materials, or references to pertinent portions of the record.").

4

### B. Defendants Fail to Show, Under Rule 12(e), that the Allegations in the Second Amended Complaint Are "Unintelligible"

Defendants seek a more definite statement under Rule 12(e) with respect to some portions of Counts I, III, V, and VIII. *See* ECF 172 at 5.[4]  Those are:

- Count I, against all individual defendants, alleging "Excessive Force (42 U.S.C. § 1983, Personal Liability)."  SAC ¶¶ 531–57.

- Count III, against certain individual defendants, alleging "Excessive Force (42 U.S.C. §1983, Supervisory Liability – Failure to Supervise, Train, and Hire)."  SAC ¶¶ 566–76.

- Count V, against all individual defendants, alleging "First Amendment Retaliation (42 U.S.C. § 1983)."  SAC ¶¶ 589–98.

- Count VIII, against all individual defendants, alleging battery, assault, and intentional infliction of emotional distress.  SAC ¶¶ 625–33.

As to those claims, Defendants complain that "allegations made collectively or generally as to unidentified persons predominate."  ECF 172 at 5.

Rule 12(e) provides a remedy where a complaint is "so vague or ambiguous that a party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  The rule "is designed to remedy unintelligible pleadings, not merely to correct for lack of detail."  *Ivymedia Corp. v. iLIKEBUS, Inc.*, 2015 WL 4254387, at *6 (D. Mass. July 13, 2015) (denying motion for more definite statement where plaintiff adequately pled their claim).  But where, as here, a pleading is sufficiently clear to advise the defendants of the claims being brought against them, a more definite statement is not required.  *Wang v. API Techs. Corp.*, No. 1:22-CV-12002-PBS, 2023 WL

---

[4] Defendants do not challenge the sufficiency of any other remaining claims. *See* ECF 178. Count II against certain individual defendants alleges "Excessive Force (42 U.S.C. § 1983, Supervisory Liability – Primary Violators)," *see* ECF 137-2 ¶¶ 558–565; Count IV against all individual defendants alleges "Failure to Intervene (42 U.S.C. § 1983)," *see* ECF 137-2 ¶¶ 577–588; Count VI against Hodson and Souza alleges "Unlawful Punishment; Freedom from Cruel Treatment and Conditions of Confinement (42 U.S.C. § 1983)," *see* ECF 137-2 ¶¶ 599–607; Count VII against BCSO alleges "Violation of Rehabilitation Act (29 U.S.C. § 794)," *see* ECF 137-2 ¶¶ 608–624.

Case 1:22-cv-10652-MPK   Document 177   Filed 06/24/25   Page 6 of 14

4163529, at *3–4 (D. Mass. May 30, 2023) (Kelley, M.J.) (denying motion for more definite statement where the "factual bases" of plaintiff's claims were "clear"), *report and recommendation adopted*, 2023 LEXIS 109035 (D. Mass. June 22, 2023); *see also MacKenzie v. Pfizer, Inc.*, No. 20-cv-11550-NMG, 2021 WL 7451166, at *4 (D. Mass. Jan. 11, 2021) (denying motion for more definite statement where defendants "[did] not seriously contend that the allegations of the FAC '[were] so vague or ambiguous [they] cannot reasonably prepare a response'" (last alteration in original) (quoting Fed. R. Civ. P 12(e))). Finally, Rule 12(e) motions are generally disfavored in light of the liberal pleading requirements of the federal rules and the availability of pretrial discovery procedures. *See Wang*, 2023 WL 4163529, at *3.

As a threshold issue, Defendants' motion is devoid of legal analysis and, save one section setting out the general standard for 12(e) and 12(f) motions, contains no citation to legal authority. Their motion should be denied on that basis alone. *See Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."); *Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co*., 840 F.2d 985, 990 (1st Cir. 1988) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."); *Martinez v. Colvin*, 12 CV 50016, 2014 U.S. Dist. LEXIS 41754, at *26–27 (N.D. Ill. Mar. 28, 2014) ("[P]arties should not view judges as bloodhounds who are merely given a whiff of an argument and then expected to search the record high and low in an effort to track down evidence to locate and capture a party's argument.").

Even construing their untimely and unsupported motion charitably, Defendants fail to identify any claim so "unintelligible" that they cannot reasonably prepare a response. *See* Fed. R.

6

Civ. P. 12(e). Nor can they: in their Motion for Leave to Amend, Plaintiffs meticulously explained how each count—including the four vaguely challenged by Defendants here—would satisfy the liberal criteria of Federal Rule of Civil Procedure 12(b)(6). *See* ECF 137-1 at 14–20.[5] Defendants did not timely oppose that motion, and they never sought reconsideration of this Court's Order granting it.

Here, the SAC adequately places Defendants on notice of what they did wrong and allows them to frame a responsive pleading. In fact, they already have: Defendants BCSO, Hodgson, and Souza answered the First Amended Complaint (FAC). *See* ECF 81. As this Court has observed, both complaints concern BCSO's response to the COVID-19 pandemic and the events of May 1, 2020. ECF 158 at 10 (explaining that "BCSO has been on notice of this litigation since its inception in 2022, if not earlier, and the new defendants are either current or former BCSO employees."). Then, after answering the complaint, Defendants engaged in *months* of extensive discovery concerning those allegations. *See Wang*, 2023 WL 4163529, at *4. A more definite statement is therefore unnecessary here. *See MacKenzie*, 2021 WL 7451166, at *4 (denying a Rule 12(e) motion where defendants had earlier answered a "substantially similar complaint").

Furthermore, Rule 12(e) "is designed to remedy unintelligible pleadings, not merely to correct for lack of detail." *Jones v. Revenue Assistance Program*, No. CV 15-14017-NMG, 2016 WL 3919843, at *8 (D. Mass. July 14, 2016) (denying motion for more definite statement). To the extent that Defendants assert that Plaintiffs have not stated a claim upon which relief can be granted, *see* ECF 172 at 8, such arguments are not relevant to the Rule 12(e) analysis. Defendants' confusion between Rule 12(b)(6) and Rule 12(e) is apparent throughout their brief, including in their request that this Court "delete claims under [counts one, three, and eight] by plaintiffs against

---

[5] Plaintiffs incorporate by reference their Memorandum in Support of Leave to Amend, ECF 137-1.

defendants that are not supported by a factual allegation by each plaintiff against each defendant." ECF 172 at 5. Defendants cite no legal authority by which this Court could "delete" a claim, nor do they identify which particular parties' claims it would have "deleted." Nor is it Plaintiffs' burden to respond preemptively to a motion to dismiss that no Defendant bothered to file. *See* ECF 172 at 6 ("If Plaintiffs know of any specific action of any of the individual defendants that supports their claims, they should plead them in a more particular statement rather than require that Defendants file motions to dismiss claims that Plaintiffs now know are unsupported."). To the extent Defendants remain confused about "which claims are asserted against which individual defendants," ECF 172 at 9, Plaintiffs refer Defendants to the claims chart already in the record. *See* ECF 137-1 at 11–12.

The thrust of Defendants' argument is that defending this lawsuit requires effort. *See* ECF 172 at 6 (complaining about "sifting through" the SAC); *id.* (complaining about filing motions to dismiss); *id.* (complaining about serving interrogatories); *id.* (complaining the allegations "geometrically multiplies the effort and expense that individual defendants must do to seek the dismissal of claims asserting an unreasonable use of force"); *id.* at 6–7 (complaining about serving "wasteful and prejudicial" interrogatories); *id.* at 7, 9 (complaining about "the scope of individual defendants' pleading (affirmative defenses), motion practice and discovery"); *id.* at 8 (complaining about "the task of preparing a motion to dismiss for each" defendant); *id.* at 9 (complaining about filing motions to dismiss); *id.* (complaining about "the scope of discovery"); *id.* (complaining about being "made [to] serve interrogatories on each Plaintiff"); *id.* (complaining that defending this lawsuit "is costly, disruptive and needlessly burdensome to the Defendants").

Of course, the necessity of foreseeable legal work is not grounds for a Rule 12(e) motion. Nor is it "good cause" to ignore litigation deadlines. *See Pena Real Estate Investments, LLC v.*

*One Hardt, LLC*, 2023 WL 8810172, at *3 (D. Mass, December 20, 2023) (finding late filing inexcusable where plaintiffs asserted that their delay was based on the need for in-depth legal and factual analysis); *Hicks v. Long Island R.R.*, 165 F.R.D. 377, 380 (E.D.N.Y. 1996) (finding the excuse of being "too busy" was "wholly unpersuasive"); *c.f. Jagielski v. Package Mach. Co.*, 93 F.R.D. 431, 432 (E.D. Pa. 1981) ("[M]ere inadvertence or carelessness is an insufficient basis for allowing late joinder." (citation omitted)).

In any event, Defendants' concerns about the burden of litigation are easily resolved. Defendants' deadline to seek dismissal or to raise affirmative defenses was 6:00 p.m. on June 6, 2025. *See* ECF 161. Save a few remaining depositions, discovery also closed that day.[6] Having squandered the opportunity to move for dismissal under Rule 12(b)(6), to answer the SAC, or to serve additional interrogatories, Defendants must now live with the consequences of their actions. *See Gestetner Corp.*, 108 F.R.D. at 141 (warning that deadlines cannot be "cavalierly disregarded by counsel without peril"); *Tower Ventures*, 296 F.3d at 46 ("A litigant who ignores…deadlines does so at their own peril.").

There being no basis in the law or fact to support Defendants' position, their motion for a definite statement pursuant to Rule 12(e) should be denied.

---

[6] The Court has granted Defendants' a 45-day extension after mediation to depose any non-settling Plaintiffs, and Defendants have also agreed to set the depositions of Defendants Rodi and Allard during that time. *See* ECF 172 at 6 n. 3. There has been no enlargement of any other discovery deadline, and Plaintiffs believe that no additional discovery is needed because the allegations of the Second Amended Complaint concern the same factual circumstances as the prior versions of the complaint, about which the parties have been conducting discovery for nearly a year and a half.

## C. Defendants Fail to Demonstrate that the Allegations in the SAC Are "Scandalous" Within the Meaning of Rule 12(f)

Defendants also ask this Court to strike several portions of the SAC as "scandalous, gratuitous and inadmissible." ECF 172 at 10. Specifically, Defendants seek to prevent "the Court, the news media or members of the public" from learning the following facts:

- Representatives Joe Kennedy III and William Keating, along with Senators Elizabeth Warren and Edward Markey, immediately called for an external investigation of BCSO's calculated use of excessive force on May 1, 2020.[7] (SAC at 1).

- On May 2, 2020, Massachusetts State Senator Sonya Chang-Diaz attempted to visit the Detention Center "to observe conditions of the facility and the detainees." Although she identified herself as a member of the state legislature, Senator Chang-Diaz was denied entry by Captain of the K-9 Division Paul Douglas. According to a subsequent state senate committee investigation, BCSO's actions violated "Massachusetts General Law and its own visitation policies and procedures."[8] (SAC ¶ 269).

- On December 15, 2020, the Civil Rights Division of the Massachusetts Attorney General's Office ("AGO") issued a 58-page report condemning BCSO and its leadership for its "calculated—that is, planned and deliberate—use of force against the ICE [Unit] B detainees that was disproportionate to the security needs at the time and that unnecessarily caused, or risked causing, harm to all involved."[9] (SAC ¶¶ 270–74).

- On May 20, 2021, then-Secretary of Homeland Security Alejandro Mayorkas directed U.S. Immigration and Customs Enforcement ("ICE") to discontinue use of the Detention Center altogether. In a memo to ICE Acting Director Tae Johnson, Secretary Mayorkas wrote, "Allow me to state one foundational principle: we will not tolerate the mistreatment of individuals in civil immigration detention or substandard conditions of detention."[10] (SAC at 1; ¶¶ 275–76).

---

[7] Letter from Elizabeth Warren, Edward J. Markey, William Keating, and Joseph P. Kennedy, III, to The Honorable Thomas M. Hodgson, "Independent Investigation of the May 1st Events at the Bristol County House of Correction," (3 May 2020).

[8] Report of the Senate Committee on Post Audit and Oversight Concerning a Visit to the Bristol County House of Corrections by a Member of the Massachusetts State Senate on May 2, 2020, December 18, 2020, https://archives.lib.state.ma.us/server/api/core/bitstreams/d3464230-7703-4e6b-a798-fd2db0ce9869/content.

[9] Office of the Massachusetts Attorney General Civil Rights Division, "Investigation into the Events of May 1, 2020 at the C. Carlos Carriero Immigration Detention Center, Unit B, Bristol County Sheriff's Office" (Dec. 15, 2020) at 1.

[10] Alejandro N. Mayorkas, DEPARTMENT OF HOMELAND SECURITY, ICE to Close Two Detention Centers, (May 20, 2021) https://www.dhs.gov/archive/news/2021/05/20/ice-close-two-detention-centers.

- Sheriff Thomas M. Hodgson was the Bristol County Sheriff from 1997 until 2022. (SAC ¶ 37).

- During Sheriff Hodgson's tenure, BCSO was notorious for its treatment of people in detention. For instance, Sheriff Hodgson instituted chain gangs;[11] attempted to charge for room and board, medical services, and haircuts;[12] and offered to send civilly detained immigrants to build President Donald J. Trump's border wall.[13] (SAC ¶ 38).

- Multiple instances of excessive force against pre-trial detainees also occurred under Sheriff Hodgson's watch. In 2017, officers at BCSO's Ash Street Jail, which was also under the control of Sheriff Hodgson and Superintendent Souza, punched and kicked pre-trial detainee Daniel Fernandes, slammed his head into a wall, and applied handcuffs so tightly that his wrists bled.[14] In 2007, BCSO officers and members of the SRT jumped on pre-trial detainee Rico Perry shortly after he was booked into BCHOC and repeatedly punched and kicked him after he was restrained.[15] In 2003, BCSO officers, under Sheriff Hodgson's supervision, used excessive force against two brothers who were detained at the Ash Street Jail.[16] (SAC ¶ 39).

- Key members of Sheriff Hodgson's leadership team were employed by BCSO during these incidents, including Superintendent Souza, Captain of the K-9 Division Douglas, and Assistant SRT Commander Ferreira. (SAC ¶ 40).

*See* ECF 172 at 10–11.

Rule 12(f) endows courts with "considerable discretion" to strike "any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. 12(f); *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (vacating grant of motion to strike). However, Rule 12(f) motions, like this one, "are narrow in scope, disfavored in practice, and not calculated readily to

---

[11] "County Sheriff Brings Back Chain Gangs," Chicago Tribune (June 17, 1999), available at https://www.chicagotribune.com/1999/06/17/county-sheriff-brings-back-chain-gangs/.

[12] *Souza v. Sheriff of Bristol County*, 918 N.E.2d 823, 831-32 (2010) (Sheriff acted in excess of statutory authority by charging higher fees for haircuts than authorized and by imposing fees for cost-of-care, medical visits, and GED testing).

[13] Shannon Dooling, "Bristol County Sheriff Offers Up Inmates to Build the Border Wall Trump Promises," WBUR (January 5, 2017), https://www.wbur.org/morningedition/2017/01/05/sheriff-hodgson-inmates-border-wall.

[14] *Fernandes v. Bouley*, No. CV 20-11612-GAO-MPK, 2021 WL 4691602, at *2–*6 (D. Mass. Aug. 2, 2021), *report and recommendation adopted sub nom. Fernandes v. Sena*, No. CV 20-11612-GAO-MPK, 2021 WL 4452311 (D. Mass. Sept. 29, 2021).

[15] *Perry v. Hodgson*, No. 10-CV-10769-JGD, 2011 WL 12696030, at *2 (D. Mass. Mar. 25, 2011).

[16] *Martinez v. Hodgson*, 265 F. Supp. 2d 135, 139 (D. Mass. 2003).

invoke the court's discretion." *Manning*, 725 F.3d at 59 (citation omitted).  That is because "striking a portion of a pleading is a drastic remedy and it is often sought by the movant simply as a dilatory or harassing tactic."  *Id.*  Thus, such motions are rarely granted absent a showing of prejudice to the moving party.  *Alston v. Town of Brookline*, 321 F.R.D. 41, 43 (D. Mass. 2017) (Kelley, M.J.) (explaining that court's focus should be on whether allegations place an "undue burden on the responding party"); *see also Fraser v. Prudential Ins. Co. of Am.*, No. 14-14161-GAO, 2018 WL 1940008, at *3 (D. Mass. Feb. 2, 2018) (denying motion to strike because movant did not show "how it was harmed or otherwise prejudiced").

Here, again, Defendants conduct no legal analysis and cite no legal authority to support their motion.  *See Rivera-Gomez*, 843 F.2d at 635.  Defendants make no attempt to identify a *single* way in which the challenged facts (which include the basic fact of Defendant Hodgson's employment at BCSO) have caused them harm or prejudice.  Nor can they, since *every* fact at issue stems from published government reports and news articles already in the public record.

Plaintiffs certainly agree that Defendants' calculated use of excessive force on May 1, 2020, were beyond the bounds of acceptable or legal conduct.  That conduct sparked widespread condemnation from federal and state authorities across the political spectrum.  And, worse yet, Defendants' coordinated attack on Plaintiffs that day was part of a pattern of abuse and excessive force perpetuated by Defendants for years.

This is all scandalous, but not within the meaning of Rule 12(f).  *In re Gitto Global Corp.*, 422 F.3d 1, 12 (1st Cir. 2005) ("[I]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action."); *Islam v. Option One Mortg. Corp.*, 432 F. Supp. 2d 181, 199 (D. Mass. 2006) (allegations

are not stricken from the "complaint merely because they sound scandalous").  Defendants' motion to strike should be denied.

### III.     CONCLUSION

For the foregoing reasons, Defendants' "Request for More Definite Statement Concerning Plaintiffs' Second Amended Complaint Pursuant to Rule 12(E) and Rule 12(F)," ECF 172, should be denied.

Dated: June 24, 2025

                                          Respectfully submitted,

                                          */s/ Elena Plenefisch*
Elena Plenefisch (BBO #713550)
Jennifer Ware-Phillips (BBO #713772)
**White & Case LLP**
75 State St.
Boston, MA 02109
(617) 979-9300
jennifer.ware@whitecase.com
elena.plenefisch@whitecase.com

Lydia Wright *(pro hac vice)*
Lillian Novak *(pro hac vice)*
**Rights Behind Bars**
1800 M Street NW Front 1 #33821
Washington, D.C. 20033
(202) 455-4399
lydia@rightsbehindbars.org
lily@rightsbehindbars.org

Benjamin J. Wish (BBO #672743)
Susmita A. Gadre (BBO #705376)
Liana LaMattina (BBO #705556)
**Todd & Weld LLP**
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
bwish@toddweld.com
sgadre@toddweld.com
llamattina@toddweld.com

> Joel M. Cohen, *pro hac vice*
> **White & Case LLP**
> 1221 Avenue of the Americas
> New York, NY 10020
> (212) 819-8200
> joel.cohen@whitecase.com
>
> *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Elena Plenefisch, hereby certify that on June 24, 2025, I caused a true and accurate copy of the forgoing to be served on counsel of record by CM/ECF.

>  */s/Elena Plenefisch* 
> Elena Plenefisch